**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9-17-CV-81225- RNS**


KATHLEEN FORBES, *et al.*,

      Plaintiffs,

v.

WAL-MART STORES, INC.,

      Defendant.

_____/


**DEFENDANT WAL-MART STORES, INC.'S MOTION FOR SUMMARY JUDGMENT**
**<u>AND INCORPORATED MEMORANDUM OF LAW</u>**


Scott A. Forman (FL Bar No. 0065950)
Email: SForman@littler.com
LITTLER MENDELSON, P.C.
333 S.E. 2nd Avenue, Suite 2700
Miami, FL 33131
Telephone: 305.400.7511
Facsimile: 305.603.2552

Kimberly J. Doud (FL Bar No. 523771)
kdoud@littler.com
LITTLER MENDELSON, P.C.
111 North Magnolia Avenue, Suite 1250
Orlando, Florida 32801
Telephone: (407) 393-2900
Facsimile: (407) 393-2929

*Attorneys for Defendant,*
*Wal-Mart Stores, Inc.*

## I.       INTRODUCTION AND SUMMARY OF THE ARGUMENT

Defendant Wal-Mart Stores, Inc. ("Walmart" or "Defendant"), pursuant to Federal Rule of Civil Procedure 56(c) and Local Rule 56.1 hereby submits this Memorandum of Law in Support of its Motion for Summary Judgment. This memorandum explains why the facts enumerated in Walmart's Concise Statement of Undisputed Material Facts ("SOF") (ECF 90), and the legal authorities cited in this memorandum, establish Walmart's entitlement to summary judgment on all claims of all Plaintiffs.

The salient points are the following. Danneman signed a waiver and release of all the claims she asserts in this lawsuit.  All her claims therefore should be dismissed.[1] To the extent Plaintiffs rely on a pattern-or-practice theory of discrimination, those claims should be dismissed because that theory is cognizable only in class actions. Plaintiffs' claims of disparate impact discrimination also should be dismissed because there is no evidence of actionable disparities, they have failed to identify with requisite specificity the facially-neutral practices they challenge, and they have no evidence that the Walmart policies they describe are incapable of separation for analysis. Further, Rule 37(c)(1) precludes Plaintiffs from supporting these claims with expert evidence because they have failed to disclose experts when required by this Court's Scheduling Order.  Finally, their disparate treatment claims should be dismissed because Plaintiffs Ray and Remington failed to identify any male comparators who were treated more favorably in terms of pay and/or promotion, and the comparators identified by Plaintiffs Forbes and Danneman either were treated no more favorably, or else any disparity is readily explained by legitimate, nondiscriminatory reasons. Accordingly, Walmart is entitled to summary judgment against all Plaintiffs regarding all claims. *See Ladik v. Wal-Mart Stores, Inc.*, No. 13-cv-123, 2014 U.S. Dist. LEXIS 117047, at *2 (W.D. Wis. 2014) (granting summary judgment because five former *Dukes* class members each failed to "adduce evidence from which a reasonable jury could find that [Wal-Mart] violated Title VII").

## II.      SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of showing the Court, by reference to the record,

---

[1] Notwithstanding her release, Walmart will address Danneman's substantive claims throughout this memorandum as alternative grounds for dismissing her claims.

that there are no genuine issues of material fact to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When the movant meets that burden, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48 (emphasis omitted). Plaintiffs may not make the required showing with evidence that has not previously been disclosed, without substantial justification. Fed. R. Civ. P. 37(c)(1).

## III.   ARGUMENT

### A.   PLAINTIFF DANNEMAN RELEASED HER CLAIMS AND SHE MUST BE DISMISSED

Plaintiff Danneman's claims are subject to Walmart's affirmative defenses of "accord and satisfaction" and "waiver and release." *See* Walmart's Answer, Affirmative Defenses 7-10 (ECF 61). On October 2, 2000, in exchange for valuable consideration, Ms. Danneman voluntarily resigned her employment with Walmart and executed a Voluntary Resignation, wherein she released "any claims whatsoever relating to [her] employment" with Walmart ("General Release"). (ECF 88-1 at ¶ 81, 88-32). Danneman's General Release is fatal to her claims.

Florida courts recognize that employees may waive and release Title VII claims if the release is supported by consideration. In the instant case, the parties agreed to resolve any and all claims Danneman had against Walmart arising out of her employment with Walmart for good and valuable consideration. Specifically, Walmart agreed to pay Danneman valuable monetary consideration in exchange for a waiver and release of all claims. Walmart completed performance by delivering to Ms. Danneman a settlement check in the agreed upon amount. Plaintiff accepted that check in full satisfaction of her claims thereby extinguishing her claims as a matter of law.

*See Fabric v. Provident Life & Accident Ins. Co.*, 115 F.3d 908 (11th Cir. 1997), *cert. denied*, 523 U.S. 1095 (1998) (holding that the plaintiff's claim was barred by the doctrine of accord and satisfaction because he accepted a check in full satisfaction of his claim).

Danneman's discrimination claims fall squarely within the terms of the General Release. In the General Release, Ms. Danneman agrees:

> For good and adequate consideration as outlined in the Joint Stipulation for Lump Sum Settlement, receipt of which is acknowledged by me, I do hereby release and discharge [Walmart] . . . from any and all . . . causes of action, claims, charges, suits, damages, debts, demands, obligations . . . or any and all other liabilities or claim of whatsoever nature . . . including but not limited to, any claim and/or claim of damages or other relief of tort, breach of contract, personal injury or **employment discrimination**, which has been or may be claimed in any state or federal forum, as a result of employment and separation of employment from [Walmart]. **I expressly agree not to bring any cause of action whatsoever against [Walmart] before any state or federal agency or in any court of law at any time after execution of this Agreement related to events occurring prior to its execution**.

(emphasis added). (ECF 88-32).

The plain meaning of this language clearly precludes Danneman from bringing any suit for employment discrimination against Walmart, including the instant suit. Furthermore, the General Release's exhaustive listing of the claims Danneman was releasing indicates that both Walmart and Danneman intended for the General Release to preclude any potential claims by Danneman against Walmart. Specifically, the General Release provides Danneman releases Walmart of several claims commonly brought by employees against their employers or former employers, including claims for discrimination under state or federal law.

Ms. Danneman, of course, cannot accept the benefits of her bargain and still prosecute the very claims she promised to release. *See Kirby v. Dole*, 736 F.2d 661, 664 (11th Cir. 1984); *Yamashita v. Merck & Co., Inc.*, 11-62473-CIV, 2013 WL 275536, at *2 (S.D. Fla. Jan. 24, 2013) (Marra, J.) ("[S]ince all of Plaintiff's claims are barred by the general release of claims he executed, the entire complaint must be dismissed with prejudice"); *Sherrod v. Sch. Bd. of Palm Beach County*, 12-80263-CV, 2012 WL 12895257, at *4 (S.D. Fla. Aug. 1, 2012) (Ryskamp, J.) ("It is also clear that the current action brought by Sherrod alleges a § 1981 claim that arises out of his prior employment with the School Board and relates to issues involving the negotiation and execution of the Settlement, which on its face is explicitly barred by the plain terms of the [general

release].") *aff'd*, 550 Fed. Appx. 809 (11th Cir. 2013). As a result, the claims she alleges in this lawsuit should be dismissed with prejudice.

## B. PLAINTIFFS' "PATTERN OR PRACTICE" CLAIMS MUST BE DISMISSED

The Eleventh Circuit holds that "private pattern or practice claims . . . must be litigated either as class actions or not at all." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 967 (11th Cir. 2008); *id.* at 968 n.29 ("a plaintiff cannot prosecute a pattern-or-practice claim alone"). Individual plaintiffs lack standing to "prosecute their pattern-or-practice claim as if they were prosecuting a class action under Rule 23(b)(2)," and allowing them to do so "without formally representing all similarly-situated employees" would raise "important" "res judicata and collateral estoppel issues." *Id.* at 968–89. Consequently, an individual, non-class action complaint based on a "pattern-or-practice theory" must be dismissed for "fail[ure] to state a claim for relief." *Pouyeh v. UAB Dep't of Ophthalmology*, 625 F. App'x 495, 498 (11th Cir. 2015) (per curiam).

This rule is widely accepted across jurisdictions. *See Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 149 (2d Cir. 2012) (joining "all of [its] sister circuits to consider the question" and holding that "the pattern-or-practice method of proof is not available to private, nonclass plaintiffs"). That is because "a pattern-or-practice claim is focused on establishing a policy of discrimination." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004). But "because it does not address individual [employment] decisions, it is inappropriate as a vehicle for proving discrimination in an individual case." *Id.* The ultimate question here is whether each Plaintiff can demonstrate that Walmart discriminated against *her*, and the pattern-or-practice claims are irrelevant to that question.

Plaintiffs are explicitly barred from "prosecut[ing] Title VII pattern-or-practice claims for … declaratory relief," which is appropriate only in class actions. *Watkins v. Sec'y Dep't of Homeland Sec.*, 401 F. App'x 461, 467 n.8 (11th Cir. 2010); *see also, e.g., Smith v. City of Lake City*, Fla., No. 3:12-cv-553-J-99MMH, 2012 WL 4772286, at *1 (M.D. Fla. Oct. 8, 2012) (striking "pattern-or-practice claim," including requests for "declaratory and injunctive relief").

Plaintiffs' Amended Complaint provides, on behalf of Plaintiffs Ray, Danneman, and Remington, "In Region 10, through its Management Team, Defendant Wal-Mart engaged in a pattern or practice of treating its female employees less favorably than similarly situated male employees." (ECF 26, ¶ 144). Variations of these sweeping pattern or practice allegation are

repeated at paragraphs 147 and 150 of the Amended Complaint.  In paragraph 161, Plaintiff Forbes alleges, "Club Region 6, through its Management Team, Defendant Wal-Mart engaged in a pattern or practice of treating Plaintiff Forbes and other female employees less favorably than similarly situated males."  These allegations are amplified at paragraphs 164 and 167. Because these pattern-or-practice allegations violate the Eleventh Circuit's rule limiting this theory of liability to class actions, they should be dismissed. Consistent with this Court's prior order (ECF 53 at 3), Walmart addresses below the remainder of their disparate treatment claims are addressed separately.

To the extent Plaintiffs' counsel intends to rely on these pattern-or-practice allegations as evidence to support their disparate treatment claims, that request should be denied because they have produced no actual evidence to support their allegations.  *See infra* at § E.

In a related multi-plaintiff case pending in this Court, Plaintiffs' counsel made similar pattern or practice allegations, which Walmart moved to dismiss.  *See Price v. Walmart Stores, Inc.*, Case No. 9:19-cv-80152-RNS.  Although acknowledging that courts limit pattern or practice claims, with its unique burden-shifting scheme, to class litigation, Counsel represented that "While Plaintiffs used the terms 'pattern or practice' in the Complaint, this is not a separate claim subject to dismissal, but merely a type of evidence, probative of discrimination."  *Price* Response in Opposition to Defendant's Motion to Dismiss Plaintiffs' Complaint, ECF at 7. *But see Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 875-879 (1984) (distinguishing a pattern or practice claim, which was dismissed, from individual claims of discrimination claim).[2] Although it may be premature to make evidentiary rulings, it would be both timely and appropriate to rule that pattern or practice allegations should be stricken from Plaintiffs' Amended Complaint.

### C.    PLAINTIFFS' DISPARATE IMPACT CLAIMS MUST BE DISMISSED

#### 1.    Forbes and Danneman failed to allege disparate impact in their EEOC charges

Disparate treatment and disparate impact are distinct theories of discrimination under Title VII. *See, e.g., Joe's Stone Crab, Inc.*, 220 F.3d at 1283 ("we cannot affirm a disparate impact judgment where the case centers entirely around allegations and evidence of intentional discrimination. The record does not support it, and to do so would unwisely conflate the distinct theories of disparate impact and disparate treatment."). Accordingly, a charge solely alleging

---

[2] For a discussion of the burden-shifting framework unique to pattern or practice claims, see *Teamsters v. United States*, 431 U.S. 324, 360-63 (1977).

disparate treatment, like those Forbes and Danneman filed, does not encompass a claim for disparate impact, and courts have dismissed disparate impact claims for failure to exhaust under these circumstances. *See e.g.*, *Murray v. John D. Archbold Mem'l Hosp. Inc.*, 50 F. Supp. 2d 1368, 1381-82 (M.D. Ga. 1999); *Butler v. Matsushita Commc'n Indus. Corp. of U.S.*, 203 F.R.D. 575, 582 (N.D. Ga. 2001) (disparate impact claim not exhausted because it was "not reasonable to expect the EEOC to investigate any neutral employment policy when all that [was] raised [was] intentional discrimination.").

Plaintiff Danneman's EEOC Charge of Discrimination alleges, "I was discriminated against in pay and promotions because of my gender.  I believe I was not paid as much in wages as my male counterparts for the same work and I was not promoted on par with my male counterparts."  (ECF 26-4).  Plaintiff Forbes alleged to the EEOC: "I believe I was discriminated against in pay because of my gender."  (ECF 26-9). Neither Danneman nor Forbes charged Walmart with disparate impact discrimination and the phrase appears nowhere in either charge, nor did they complain about facially neutral policies; thus, neither plaintiff exhausted her administrative remedies regarding her disparate impact claim. Their claims must be dismissed with prejudice.[3]  *See Thomas v. Miami Dade Pub. Health Tr.*, 369 F. App'x 19, 22 (11th Cir. 2010) ("No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge.").

### 2.     Plaintiffs Ray and Remington's Complaint fails to identify a facially-neutral practice

Plaintiff Ray's employment with Walmart ended in 2004 and Plaintiff Remington's ended in 2003. (ECF 26 at ¶¶19 and 21).  Neither has standing to challenge policies initiated after their employment terminated.  In a similar vein, neither has standing to challenge policies or practices

---

[3] In contrast, their co-plaintiff Linda Ray complained to the EEOC "the compensation system used by Wal-Mart had a disparate impact on women like me …" (ECF 26-1, ¶6; ECF 26-2, ¶8). Although courts permit plaintiffs who failed to file an EEOC charge to piggyback on the charge of a co-plaintiff who filed a timely charge under certain circumstances, this doctrine does not apply to co-plaintiffs who filed their own charges.  Plaintiffs' claims are limited to the scope of their own charges.  *See Rodrigues v. SCM I Invs., LLC*, Case No: 2:15-cv-128-FTM-29CM, 2015 WL 6704296, *6 (M.D. Fla. Nov. 2, 2015) ("where a plaintiff has filed an individual EEOC charge, such a plaintiff should be required to rely upon his or her own EEOC charge, and cannot reasonably rely upon the other claimant's charge") (quoting *Gitlitz v. Compagnie Nationale Air Fr.*, 129 F.3d 554, 557 (11th Cir. 1997)).

that did not apply to their jobs or locations.  Because Ray and Remington have standing to challenge only policies and practices that adversely impacted them, many of the allegations in their complaint are irrelevant to a disparate impact claim.

For example, paragraph 50 of the Amended Complaint describes a pay policy that became effective no earlier than June 2004.  Because Remington's employment ended in 2003, she cannot have been injured by this policy and whether it had a disparate impact does not concern her. Paragraph 51 of the Complaint alleges that a pay cap was introduced for each job class in 2006, but because neither Ray nor Remington was still employed, Ray's employment having ended in 2004, neither can sue regarding the effects of that policy.  Paragraphs 53 and 54 describe policies impacting Assistant Managers and Co-Managers, but Ray and Remington held neither position and cannot challenge either of those policies. In fact, they disclaim the need to identify any particular facially-neutral policy, and now are precluded from doing so.

### 3.   Plaintiffs are precluded from presenting evidence regarding a disparate impact caused by any one of Walmart's policies or practices

Despite the several paragraphs alluding to various facets of Walmart's employment policies, Plaintiffs are precluded from identifying any one of them as causing a disparate impact. In paragraph 180 of the Amended Complaint, Plaintiffs make the following allegation regarding Region 10, where Plaintiffs Ray, Danneman, and Remington were employed: "Wal-Mart's pay and promotion policies and procedures are, thus, not capable of separation for analysis, and accordingly the entire decision-making process for compensation and promotion decisions may each be analyzed as one employment practice." (ECF 26, ¶180). The same allegation is repeated regarding Region 6, where Forbes was employed. (ECF 26, ¶191). These propositions, that Walmart policies are "inseparable," are not pled in the alternative; rather, they are judicial admissions that Plaintiffs now may not contradict. "[A] party is bound by the admissions in his pleadings" and when a fact is judicially admitted in a pleading, its proof is of "the highest possible probative value" and is "beyond the power of evidence to controvert [it]." *Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983).

This admission is highly consequential for summary judgment.  Plaintiffs now must present summary judgment evidence that the policies they reference are "not capable of separation for analysis."  42 U.S.C. 2000e-2(k)(1)(B)(i); *Tabor v. Hilti, Inc*., 577 Fed. Appx. 870, 877 (10th Cir. 2014) ("Under § 2000e-2(k)(1)(B)(i), it was [plaintiff's] burden to demonstrate that the GDCP

and the interview process are not capable of separation for analysis and should be analyzed as one employment practice"); and *Davis v. Cintas Corp.*, 717 F.3d 476, 494-98 (6th Cir. 2013).[4] This they cannot do.

### 4. Plaintiffs may not present expert testimony as summary judgment evidence

Plaintiffs are precluded from relying on expert evidence either to prove that Walmart's policies are incapable of separation for analysis, or to establish an alleged "adverse impact," an essential element of a disparate impact claim.[5]  This Court's Scheduling Order required expert disclosures to be made no later than May 3, 2019. (ECF 38).  Because Plaintiffs made no such disclosures by that date, they are precluded from opposing Walmart's summary judgment motion with expert evidence of any kind. *See* Fed. R. Civ. P. 37(c)(1).  Accordingly, the disparate impact claims of all Plaintiffs must be dismissed because of the absence of evidence on essential elements of their claims. *Celotex Corp. v. Catrett*, 477 U.S. at 325 ("the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case"); *see also Perry v. Orange County,* 341 F. Supp. 2d 1197*,* 1214 (M.D. Fla. 2004) (disparate impact "claims … are incapable of proof absent strong and credible expert testimony"); *Sims v. Montgomery County Comm'n*, 766 F. Supp. 1052, 1101 (M.D. 1990) (refusing to address disparate impact claim where "[plaintiff] offered no expert testimony regarding how the court should determine whether there has been adverse impact; there is no expert testimony whatsoever from the … class as to what comparisons the court should draw and as to why these particular comparisons are job related and are meaningful statistically.").

---

[4] It is facially implausible that the policies complained of are inseparable.  Plaintiffs Danneman and Remington, whose employment ended prior to 2004, could not have been affected by subsequent policies. These Plaintiffs must separately analyze the impact of pre-2004 policies. At minimum, the various policies may be distinguished based on the Plaintiffs' dates of employment and the jobs they held. Moreover, because Walmart maintains data regarding its employees' dates of employment, and the jobs they held, and produced that data in this case, there is no basis for concluding these policies are incapable of separation. (ECF 90).

[5] In a disparate impact claim, a plaintiff must establish three elements: "(1) there is a significant statistical disparity between the proportion of members of the protected class available in the labor pool and the proportion of members of the protected class hired; (2) there is a specific, facially neutral employment practice; and (3) a causal nexus exists between the employment practice and the statistical disparity." *Jefferson v. Burger King Corp.*, 505 F. App'x 830, 834 (11th Cir. 2013) (citing *E.E.O.C. v. Joe's Stone Crab, Inc*., 220 F.3d 1263, 1274 (11th Cir. 2000)).

Without specifying any specific policy that caused a disparate impact, while disclaiming the need to, and without evidence to establish that Walmart's policies are incapable of separation for analysis, Plaintiffs' disparate impact claims must be dismissed.

**D.  PLAINTIFFS' DISPARATE TREATMENT CLAIMS SHOULD BE DISMISSED BECAUSE THEY FAILED TO EXHAUST ADMINISTRATIVE REMEDIES**

**1.  The Scope Of Plaintiffs' Claims Is Limited By The Scope Of Their Charges**

A plaintiff may not raise in her complaint claims that were not first presented to the EEOC. This charge-filing requirement is essential to Title VII's administrative scheme because it promotes the statute's goal of informal conciliation.  *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1220, 1221, 1225 (11th Cir. 2001) (holding the EEOC charge-filing requirement is designed to "give the employer prompt notice of the complaint against it," and "to give the EEOC sufficient time to attempt the conciliation process before a civil action is filed;" the charge-filing requirement exists "so that the employer can attempt to resolve the issue through conciliation"). Obviously, the agency cannot investigate or conciliate a claim of which it is unaware.  *Rodriguez v. Sec'y of the Dep't of Veterans Affairs*, 605 F. App'x 957, 958 (11th Cir. 2015) ("[t]o determine whether a complaint falls within this scope, [the court] asks whether the complaint is 'like or related to, or grew out of, the allegations contained in her EEOC charge.'").

Accordingly, "a plaintiff may not make a conclusory charge of discrimination and then file suit on whatever facts or legal theory the plaintiff may decide upon." *Faibisch v. University of Minnesota,* 304 F.3d 797, 803 (8th Cir. 2002).  Instead, the charge must identify the bad actors and describe generally the action or practices complained of. Yet, Plaintiffs' Charges herein neither identify the alleged bad actors or the alleged comparators nor generally describe the acts or practices complained of.  Thus, their vague, generalized charges thwart the policy served by the charge-filing requirement — "to protect employers by giving them notice of the discrimination claims being brought against them, [and to provide] the EEOC with an opportunity to conciliate the claims." *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1196 (10th Cir. 2004).

Further to that point, the Second Circuit held that allegations that the plaintiff had "consistently been the target of discriminatory practices and treatment" from "October of 1987 to [the] present," and "denied promotional opportunities and consideration based on my race and sex," were impermissibly vague and could not "serve as predicates for allegations in the

complaint."*Butts v. City of New York Dept. of Hous. Pres. & Dev.*, 990 F.2d 1397, 1403 (2d Cir. 1993) (alteration in original). The court explained, "Were we to permit such vague, general allegations, quite incapable of inviting a meaningful EEOC response, to define the scope of the EEOC investigation and thereby predicate subsequent claims in the federal lawsuit, such allegations would become routine boilerplate and Title VII's investigatory and mediation goals would be defeated." *Id.*; *see also Manning v. Blue Cross & Blue Shield,* 2012 U.S. Dist. LEXIS 87953, *3-*4 (D. Kan. 2012) ("I have been subjected to an unwelcome working environment by Respondent as a result of my race; [and] I have been the victim of Race discrimination as a result of the above, and actions taken against my by Respondent," held too vague to exhaust remedies).

These observations are particularly apt here because Plaintiffs have not meaningfully limited the timeframe during which they claim to have experienced discrimination.  Ray's charge first alleges she suffered discrimination between 1998 and 2004 and her amended charge alleged discrimination during an eight-year period, 1996-2004. (ECF 26-1, 26-2). Forbes, Danneman and Remington allege discrimination was "Continuing," although Forbes was employed for approximately 15 years while both Danneman and Remington were employed for 10 years, and none were employed at the time of their Charges.  (ECF 26-4, 26-6, 26-7, 26-9). Accordingly, Plaintiffs have left both the EEOC and Walmart to guess when during their extensive periods of employment an actionable pay difference arose, which males were paid more than they were paid, the jobs they held, and when they were denied promotions and into which positions. This vagueness is particularly problematic with regard to the claims discussed below.

### 2.      Plaintiffs' EEOC Charges Failed to Exhaust Claims of Pay Discrimination

No plaintiff identified in her EEOC charge a similarly-situated male comparator who allegedly was paid more than she was. Forbes's sole allegation of discrimination is the following: "During my employment, I believe I was discriminated against in pay because of my gender. Specifically, I believe I was not paid as much in wages as my male counterparts for the same work."  (ECF 26-1). Because Forbes does not identify a single male counterpart, and her allegation of unequal pay simply paraphrases Title VII's prohibitions, Forbes failed to exhaust her pay discrimination claim, and her claim should be dismissed.

Plaintiff Ray asserts generally that she was "paid less than men in the same or similar positions requiring equal skill, effort, and responsibility." (ECF 26-1). But that merely paraphrases

the Equal Pay Act, 29 U.S.C. §206(d)(1).  Subsequently, Ray amended her charge, but the amendment is no more enlightening regarding a comparable male whose pay exceeded hers.  Ray states that she knew of "at least 4 associates who were hired after me getting a higher wage than I was," but provides no hint of whom they might be.  (ECF 26-2).  Further, "associates" is a generic reference to Walmart employees-- it is not a job title.  Thus, read in context, her charge states that four Walmart employees were paid more than she was, but fails to indicate the jobs they held (or facts comparing those jobs to hers), where they were employed, and when during her eight-year career this pay disparity arose.

Plaintiff Danneman alleges: "I believe I was not paid as much in wages as my male counterparts," but she fails to identify those counterparts.  (ECF 26-4).  Although Plaintiff Remington informed the EEOC of the jobs she held during her decade at Walmart, she omits naming any male who was paid more than her, in any of the stores where she worked.  Rather, she asserts generally "I believe that during my time at Walmart I was discriminated against because of my gender (female) in pay." (ECF 26-7).

The allegations of each plaintiff lack sufficient specificity to permit the EEOC to investigate their claims meaningfully because they omit any male comparator whose pay exceeded their own. Yet, the comparison between the pay of the plaintiff and a similarly situated comparator is the heart of a pay discrimination claim.  "In a comparator analysis, the plaintiff is matched with a person or persons who have very similar job-related characteristics and who are in a similar situation to determine if the plaintiff has been treated differently than others who are similar to [her]." *Cooper v. S. Co.*, 390 F.3d 695, 735-36 (11th Cir. 2004) overruled on other grounds by *Cardelle v. Miami Beach Fraternal Order of Police*, 593 F. App'x 898 (11th Cir. 2014). This comparator "must be similarly situated [to Plaintiff] in all relevant respects." *Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079, 1091 (11th Cir. 2004) (internal quotation marks and citation omitted). The Eleventh Circuit has explained that under Title VII, "[t]he comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson*, 376 F.3d at 1091.

These observations are most relevant because Plaintiffs have not meaningfully limited the timeframe during which they claim to have experienced discrimination.  As set forth above, Ray's charge alleges she suffered discrimination during the eight-year period, 1996-2004, and Danneman and Remington allege discrimination was "Continuing," although both were employed for 10

- 12 -

years.  (ECF 26-2, 26-4, 26-6, 26-7).  Accordingly, Plaintiffs have left both the EEOC and Walmart to guess when during their extensive periods of employment an actionable pay difference arose, who was paid more, and the jobs they held.  Accordingly, this Court should find that Plaintiffs failed to exhaust their administrative remedies and dismiss their pay discrimination claims.

### 3. Plaintiffs failed to exhaust their promotion claims[6]

The word "promotion," or any of its variants, is nowhere in Forbes's charge. Nor is a "failure to promote" "like or related" to a claim of pay discrimination. A claim of unequal pay is not the equivalent of a claim alleging a failure to promote for exhaustion purposes. *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994) (affirming district court's conclusion that discriminatory promotion claims were barred where the EEOC charge claimed only unequal pay). Accordingly, to the extent Forbes asserts a failure to promote, her claim must be dismissed.

The remaining plaintiffs' discrimination charges describe their "failure to promote" claims in terms that are unacceptably vague.  Ray identifies only one position she aspired to but did not receive. She "asked about moving to the hard lines department but I was told that I couldn't handle that," yet the "hard lines department" is not a job, but rather a general reference to certain departments within a Walmart store.  (ECF 26-2 at ¶13). She fails to specify the actual position she sought or allege it would have been a promotion. (ECF 26-2). Danneman's charge merely states, "I was not promoted on par with my male counterparts."  (ECF 26-4).  Remington's charge is equally conclusory: "I also believe that males were given more promotional opportunities than female employees."  (ECF 26-7 at ¶7). None of these statements is specific enough to find Plaintiffs have exhausted her charge-filing obligations.  As a consequence, all their disparate treatment claims must be dismissed.

### E. PLAINTIFFS' INDIVIDUAL CLAIMS HAVE NO MERIT

### 1. Plaintiffs Either Cannot Prove A *Prima Facie* Case Or Cannot Prove Walmart's Legitimate, Non-Discriminatory Reasons Are Pretexts For Discrimination

Should this Court find that Plaintiffs claims are viable despite their threadbare charges of

---

[6] "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

discrimination, summary judgment is still warranted.  The Eleventh Circuit applies the well-known burden-shifting framework to decide summary judgment in discrimination cases.  *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). To establish a *prima facie* case of intentional discrimination in compensation, a plaintiff must establish that: (i) she belongs to a protected category; (ii) she received low wages; (iii) similarly situated comparators outside the protected class received higher compensation; and (iv) she was qualified to receive the higher wage. *See Cooper v. Southern Co*., 390 F.3d 695, 735 (11th Cir. 2004).

A plaintiff may establish a *prima facie* case of discrimination based on an employer's failure to promote her by showing that: (1) she is a member of a protected class; (2) she was qualified for and applied for the position; (3) she was denied the position; and (4) other equally or less qualified employees who were not members of the protected class were promoted.  *See Brown v. Alabama Dep't of Transportation*, 597 F.3d 1160, 1174 (11th Cir. 2010); *Williams v. Waste Mgmt., Inc*., 411 Fed. Appx. 226, 227 (11th Cir. 2011).

If a plaintiff succeeds in proving a *prima facie* case of either pay or promotion discrimination, the burdens shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  Unless the plaintiff can present a genuine issue of material fact regarding whether the employer's proffered explanation is a pretext for discrimination, the employer is entitled to summary judgment. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

 "[T]he plaintiff and the employee [s]he identifies as a comparator must be 'similarly situated in all material respects.'" *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1218 (11th Cir. 2019). Further, this comparator must previously have been identified by the plaintiff, or the employer, particularly one with millions of employees over the course of an actionable period of 21 years, would be on a never-ending search to uncover and negate potential comparators.  *See generally Woods v. Austal, U.S.A., LLC*, 2011 U.S. Dist. LEXIS 42361, *19-*35 (S.D. Ala. 2011).

Plaintiff Danneman, whose disparate treatment claims in fact were released and need not be considered, identifies just one comparator, John DeGrasse.  (ECF 26 at ¶ 105).  However, the summary judgment evidence establishes that he resigned from Walmart in June of 1998, before the actionable period in this case. (ECF 88 at ¶ 86; ECF 89 at ¶ 90).  To the extent pay differences prior to the actionable period have relevance, which they do not, DeGrasse was paid $1,331.94 bi-

- 14 -

weekly and Danneman was paid $1,319.49. (ECF 88 at ¶¶ 78, 86; ECF 89 at ¶ 93). This difference of approximately $6 per week is readily accounted for by differences in their performance ratings. In 1998, DeGrasse received an overall performance rating of 4, and Danneman received a 3, resulting in DeGrasse receiving a slightly greater pay increase. (ECF 88 at ¶ 86; ECF 89 at ¶ 92). This difference in performance is a legitimate, nondiscriminatory explanation for this minor difference in pay.

Danneman fails to identify any position to which she sought promotion during the actionable period. Rather, she concedes she was demoted in May of 1999. (ECF 26 at ¶110). Yet, she cannot sue over that action because "demotion" was not at issue in *Dukes*, and, therefore, such a claim was not tolled.[7] Moreover, even if her claim was tolled, it is omitted from her Charge of Discrimination.[8] (ECF 26-4). Thus, summary judgment is warranted as to Danneman's claims, notwithstanding the valid and binding General Release she signed.

In the Amended Complaint, Plaintiff Forbes alleges only pay discrimination. (ECF 26). Forbes identifies two Photo Managers by their full names, Alex Kellner and Scott Rhodes.[9] (ECF 26 at ¶ 135). She alleges she was paid less than these comparators because of her sex; however, the facts say otherwise. Kellner was never paid more than Forbes, (ECF 88 at ¶ 45-46, ECF 89 at ¶¶33-48), and therefore Forbes cannot make out a *prima facie* case of pay discrimination based on that comparison.[10]

---

[7] To benefit from tolling under American Pipe, claims in an individual suit that follow a failed class action must "concern the same evidence, memories, and witnesses" as the earlier class action. *Coon v. Ga. Pac. Corp*., 829 F.2d 1563, 1571 (11th Cir. 1987) (quoting American Pipe, 414 U.S. at 562 (Blackmun, J., concurring)); *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 355 (1983) (emphasizing that it is "important to make certain . . . American Pipe is not abused by the assertion of claims that differ from those raised in the original class suit") (Powell, J., concurring). The *Dukes* class challenged "the discretion exercised by [] local supervisors over pay and promotion matters." *Dukes*, 564 U.S. at 342. A claim regarding Danneman's demotion cannot be proven (or disproven) with the "'same evidence, memories, and witnesses'" as the *Dukes* class's

[8] *Lewis v. Md. Transit Admin*., 2015 U.S. Dist. LEXIS 109264,* 17 (D. Md. 2015) (failure to promote allegation in an EEOC charge does not exhaust a demotion claim).

[9] After a diligent search, Walmart is unable to identify the third alleged comparator Forbes identified in the Amended Complaint, an individual named "Richard." (ECF 88 at ¶ 53).

[10] In paragraph 137 of the Amended Complaint, Plaintiff Forbes also identified Matt (Last Name unknown), Kenneth Smith, Paul Haudricourt, Joe Carruso, John Bammon, and Sam Grauer as being additional similarly-situated comparators who were paid more than her. (ECF 26). However, Smith was a meat manager, Haudricourt, Carruso, Bammon and Grauer were Area Managers, and

While Rhodes was paid more than Forbes, she cannot present evidence that Walmart's legitimate, nondiscriminatory reason for the pay difference is pretextual.  (ECF 88 at ¶¶47-52).  Walmart's summary judgment evidence establishes that Rhodes was both more highly rated and generated far more profit for his photo lab than Forbes, often doubling her profitability. *See id.*  These differences in performance and profitability more than suffice to explain the legitimate, non-discriminatory difference between Forbes and Rhodes in compensation.

Plaintiffs Ray and Remington cannot present *prima facie* evidence of pay discrimination because they failed to identify any comparators.  (ECF 26 at ¶¶113-122).

### F.    Plaintiffs Cannot Oppose Summary Judgment With Undisclosed Evidence

Walmart explained above why Plaintiffs cannot oppose summary judgment with expert testimony that is undisclosed.  *See* §III. F.  A similar sanction applies to fact witnesses.  Rule 37(d)(1) is self-executing and prohibits parties from relying on undisclosed evidence to defeat an otherwise meritorious motion for summary judgment.  The rule provides: "If a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."

The limitations of Plaintiff Ray's charge of discrimination is described above; her allegations in the Amended Complaint is no more illuminating regarding her comparators.  In paragraphs 92-97, which pertain to her individual allegations of discrimination, she fails to indicate when she applied for "Housewares in 'Hardlines,'" or which male ultimately filled the position and when.  She further alleges that when she was Department Manager of Pets, she had two male associates who were "hired in at a higher rate than she was making." (ECF 26, ¶94). Yet, although they were her "subordinates," *id.*, whose name she should know, she shields their identities from Walmart.  Ray's Disclosures are no more forthcoming.  Ray identifies no comparators either with respect to her pay or promotion claim. (ECF 83).

In response to Walmart's Interrogatory No. 3, which asks Ray to specify the facts regarding the promotion and pay discrimination claims she alleges, her complete response was the following: "I contend that I was paid less than similarly situated men. The exact amount of wages will be

---

Forbes was not. (ECF 88 at ¶¶ 54-58). Walmart searched and was unable to identify an individual named "Matt."

calculated upon receipt of pay data from Wal-Mart which has been requested and upon which the parties continue to confer. Upon information and belief, the persons listed in Number 1 have knowledge. Discovery and investigation continue." (ECF 87). Thus, the comparators relevant to both her pay and promotion allegations remain a mystery.

Plaintiff Danneman alleges she was paid less than John DeGrasse.  (ECF 26 at ¶¶99-112 ). However, DeGrasse's employment terminated prior to the actionable period in this case. (ECF 88 at ¶ 86; ECF 89 at ¶90).  Danneman's Disclosures identify John DeGrasse as the sole employee to whom she alleges she is "similarly situated."  (ECF 83). Her interrogatory responses likewise identify only DeGrasse as her male comparator.  (ECF 85). Accordingly, she is precluded from opposing summary judgment with evidence regarding anyone but DeGrasse, and Walmart's legitimate, non-discriminatory explanation for the slight pay difference suffices for summary judgment.

Plaintiff Remington's individual claims are pled in paragraphs 113-122 of the Amended Complaint.  (ECF 26). Although she alleges at paragraph 118 that a male was paid more than she was while in the management training program, she fails to identify this individual.  In paragraph 121, Remington references a "a new male employee that she hired as a stocker" who was offered an Assistant Manager position at a higher salary than she was receiving, but failed to identify him by name. Remington's Disclosures likewise omit the names of these individuals. (ECF 83). When asked via interrogatories to identify the facts relating to her pay and promotion claims, and persons with knowledge of those facts, she repeated verbatim the same evasive response as Ray. (ECF 86 at Interrogatory 3).

Plaintiff Forbes is slightly more forthcoming.  Although her charge of discrimination identifies no comparator, Forbes's individual allegations are pled at paragraphs 123-141 of the Amended Complaint.  (ECF 26).  She identifies three potential comparators who worked as Photo Department Managers during the actionable period---Alex Kellner, Scott Rhodes, and "Richard." She also identifies Paul Hauldercourt, Joe Carruso, and John Bammon, three Area Managers, who she alleges are similarly situated to her as well as Ken Smith, a Meat Manager.  (ECF 26, ¶ 137). However, her Disclosure identifies only "Matt [last name unknown]" as "similarly situated." (ECF 83). Forbes' interrogatory response lists everyone previously identified plus Sam Grauer. (ECF 84). As set forth above, Smith, Hauldercourt, Carruso and Bammon are not proper comparators because they worked in different positions than Forbes with different job duties and supervisors.

(ECF 88 at ¶¶ 9, 12, 54-58). Additionally, Smith worked with Forbes well before the actionable period commenced. (ECF 88 at ¶¶ 54-55). And as noted above, Alex Kellner never made more than she did, and Scott Rhodes's photo lab generated significantly more profitability.

Plaintiffs should be precluded from referencing any other comparators in their summary judgment responses. Consequently, this Court should grant summary judgment against Ray and Remington, who identified no comparators, and strike the testimony of any previously undisclosed comparators proffered by Forbes or Danneman. Because Walmart's summary judgment evidence accounts legitimately for any difference in pay between Forbes and Danneman and the comparators they disclosed, their claims also should be dismissed on the merits.

## IV.   PLAINTIFFS' LACK OF SPECIFICITY & INCOMPLETE DISCOVERY RESPONSES ILLUSTRATE WHY LACHES WARRANTS DISMISSAL

Congress has "carefully prescribed" short deadlines for resolving Title VII claims. *Mohasco Corp. v. Silver*, 447 U.S. 807, 825–26 (1980). Accordingly, the Eleventh Circuit "impose[s] upon [EEOC] complainants some 'minimum responsibility ... for an orderly and expeditious resolution of their claims,'" and has warned against "enabling complainants to enjoy a 'manipulable open-ended time extension which could render the statutory minimum meaningless.'" *Kerr v.McDonald's Corp.*, 427 F.3d 947, 952 (11th Cir. 2005) (quoting *Zillyette v. Capital One Fin.Corp.*, 179 F.3d 1337, 1340 (11th Cir. 1999)) (alteration original).

The Eleventh Circuit has expressly held that "laches is applicable to Tile VII . . . actions brought by private plaintiffs." *Howard v. Roadway Exp., Inc.*, 726 F.2d 1529, 1532 (11th Cir. 1984) (elements consist of inexcusable delay and undue prejudice). The Supreme Court similarly acknowledged that the defense of laches is available in Title VII actions when either the employee or the EEOC is the cause of an "inordinate" delay in bringing suit.[11] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121–22 (2002). *See, e.g., EEOC v. Louisiana Power & Light Co.*, 1989 U.S. Dist. LEXIS 3818, *8 (E.D. La. 1989). In this case, Plaintiffs obtained notices of right-to-

---

[11] "The delay between filing the charge and filing suit in this case was 12.5 years. There is precedent finding this delay is unreasonable. *See Jeffries v. Chicago Transit Authority*, 770 F.2d 676 (7th Cir. 1985), *cert. denied*, 475 U.S. 1050 (1986) (9 year, 3 month delay between filings unreasonable); *EEOC v. Liberty Loan Corp.*, 584 F.2d 853 (8th Cir. 1978) (4 year, 4 month delay between filings unreasonable); *EEOC v. Firestone and Rubber Co.*, 626 F.Supp. 90 (M.D. Ga. 1985) (4 year, 11 month delay between filings unreasonable); *EEOC v. Bray Lumber Co.*, 478 F.Supp. 993 (M.D. Ga. 1979) (4 year, 5 month delay between filings unreasonable)."

sue as much as 21 years after the alleged discrimination occurred, 17 years after the bellwether charge of discrimination was filed in *Dukes,* and nearly 7 years even after they filed their own individual charges.  Under the precedents cited in *Louisiana Power & Light*, footnoted above, delays of this length are inherently prejudicial.

This Court's order of March 12, 2019 (ECF 53), finding that Walmart's laches defense implicated factual issues and could not be resolved on a motion to dismiss, now should be revisited based on the following facts.  The Court previously credited Plaintiffs' representations that it was relying on the EEOC to investigate charges of pattern or practice and disparate impact discrimination, which "would take considerable time." (ECF 53 at 4). The facts reveal that Plaintiffs were not awaiting the EEOC's determination because Plaintiffs bypassed that investigation by requesting right-to-sue letters.  Thus, the fruits of the EEOC investigation are nowhere of record, and this suit could have been brought years ago on precisely the same evidentiary basis.  Accordingly, it was Plaintiffs, not the EEOC, who delayed in bringing suit. (ECF 26-3 ("[The Notice of Right to Sue] has been issued at your request")).

Although it is reasonable for courts to presume prejudice when roughly 20 years elapse between the injury and the lawsuit, in this case Plaintiffs make the extent of prejudice plain. The prejudice to Walmart is evident in Plaintiffs' discovery responses, which vividly illustrate the extent to which memories fade with time.  Indeed, so much time had elapsed that Forbes could only describe some of her alleged comparators as Matt (Last Name Unknown), and Richard (Last Name Unknown). Forbes's allegations in the Amended Complaint reference "Jeff," another one-named witness. (ECF 26 at ¶132).  Her Disclosures added two additional persons with unknown last names. (ECF 83).  Danneman's interrogatories identified two managers who last name was unknown, and two witnesses with unknown last names. (ECF 85).  Remington's interrogatory responses identified six managers whose last name was unknown, and one witness whose last name was unknown, and another whose job was unknown.  (ECF 86).  Ray's memory apparently was so dimmed she was unable to identify the associates she directly supervised. (ECF 26, ¶94).

Rather than attempting to revive these recollections and point Walmart to potential witnesses, Plaintiffs spent the intervening years finding witnesses whose testimony would be more to their liking. Thus, Plaintiffs' Disclosures identify the first and last names of 290(!) witnesses, while unabashedly forgetting the names of workplace colleagues they knew for years.  It would be inequitable in the extreme to permit Plaintiffs to capitalize on memory lapses and gamesmanship

- 19 -

of such high degree.

## V.  CONCLUSION

The arguments raised in this Memorandum dispose of all the claims of each of the Plaintiffs.  Danneman's suit should never have been filed because she released her claims when her employment with Walmart terminated.  Plaintiffs may not assert pattern or practice claims because that cause of action is reserved for class actions.  They cannot prevail on their claims of disparate impact because they cannot identify with specificity any facially-neutral practice that allegedly caused them injury.  In fact, they are precluded from doing so because they judicially admitted they cannot distinguish among these policies.  Finally, Plaintiffs cannot prevail on their disparate treatment claims because Ray and Remington fail to identify any comparators, and now are precluded from doing so, Danneman did marginally worse than her comparator, and the difference has a nondiscriminatory explanation, and Forbes did as well as one comparator and there are legitimate, nondiscriminatory reasons why she did not fare as well as the other.  Accordingly, Walmart asks this Court to grant its motion for summary judgment in its entirety.

Respectfully submitted this 17th day of May 2019.

*/s/ Scott A. Forman*
Scott A. Forman (FL Bar No. 0065950)
Email: SForman@littler.com
**LITTLER MENDELSON, P.C**.
333 S.E. 2nd Avenue, Suite 2700
Miami, FL 33131
Telephone: 305.400.7511
Facsimile: 305.603.2552

Kimberly J. Doud (FL Bar No. 523771)
kdoud@littler.com
**LITTLER MENDELSON, P.C.**
111 North Magnolia Avenue, Suite 1250
Orlando, Florida 32801
Telephone: (407) 393-2900
Facsimile: (407) 393-2929

*Attorneys for Defendant*
*Wal-Mart Stores, Inc.*

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of May, 2019, the foregoing *Defendant's Motion for Summary Judgment* was electronically filed with the Clerk of Court using CM/ECF, and the foregoing document is being served on all counsel of record identified on the attached Service List by operation of the Court's electronic filing system.

<u>/s/ Scott A. Forman</u>
Scott A. Forman

## SERVICE LIST

<u>**Counsel for Plaintiffs**</u>

Lindsey Wagner, Esq.
LWagner@scottwagnerlaw.com
Cathleen Scott, Esq.
CScott@scottwagnerlaw.com
**SCOTT WAGNER AND
ASSOCIATES, P.A.**
Jupiter Gardens
250 South Central Boulevard, Suite 104
Jupiter, FL 33458

Leslie M. Kroeger, Esq.
LKroeger@cohenmilstein.com
Diana L. Martin, Esq.
DMartin@cohenmilstein.com
**COHEN MILSTEIN SELLERS &
   TOLL, PLLC**
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410

Joseph M. Sellers, Esq.
JSellers@cohenmilstein.com
Christine E. Webber, Esq.
CWebber@cohenmilstein.com
**COHEN MILSTEIN SELLERS &
   TOLL, PLLC**
1100 New York Ave NW, Suite 500 West
Washington, DC 20005

<u>**Counsel for Defendant**</u>

Scott A. Forman, Esq.
Email: SForman@littler.com
**LITTLER MENDELSON, P.C.**
333 S.E. 2nd Avenue, Suite 2700
Miami, FL 33131

Rachel Brass, Esq.
RBrass@gibsondunn.com
**GIBSON, DUNN & CRUTCHER, LLP**
555 Mission Street
San Francisco, CA 94105-0921

FIRMWIDE:164463724.1 080000.1363