IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9-17-CV-81225- RNS

KATHLEEN FORBES, *et al.*,

    Plaintiffs,

v.

WAL-MART STORES, INC.,

    Defendant.

_____/

**DEFENDANT WAL-MART STORES, INC.'S
REPLY TO PLAINTIFFS' RESPONSE TO WALMART'S STATEMENT OF
UNDISPUTED MATERIAL FACTS**

Scott A. Forman (FL Bar No. 0065950)
Email: SForman@littler.com
LITTLER MENDELSON, P.C.
333 S.E. 2nd Avenue, Suite 2700
Miami, FL 33131
Telephone: 305.400.7511
Facsimile: 305.603.2552

Kimberly J. Doud (FL Bar No. 523771)
kdoud@littler.com
LITTLER MENDELSON, P.C.
111 North Magnolia Avenue, Suite 1250
Orlando, Florida 32801
Telephone: (407) 393-2900
Facsimile: (407) 393-2929

*Attorneys for Defendant,
Wal-Mart Stores, Inc.*

## I. REPLY TO PLAINTIFFS' RESPONSE TO WALMART'S STATEMENT OF FACTS

### A. Plaintiffs Concede Many Material Facts Are Undisputed

Plaintiffs concede the statements contained in the following paragraphs of Walmart's Statement of Undisputed Material Facts (SOF) (ECF 118-1) are undisputed: Paragraphs 1, 2, 3, 4, 5, 16, 19, 21, 22, 24, 27, 33, 34, 38, 43, 44, 45, 46, 48, 49, 56, 50, 60, 62, 63, 65, 66, 72, 74, 75, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, and 94. To the extent Plaintiffs fail to address facts in other paragraphs, those facts are undisputed.

### B. Plaintiffs Concede Additional Facts Are Undisputed With Qualifications

Plaintiffs concede the material facts contained in Paragraphs 9, 12, 20, 25, 28, 35, 40, 41, 42, 47, 53, 54, 55, 56, 57, 59, 61, 64, 68, 69, 70, 71, and 73 are undisputed; however, they qualify their concession to try and create material issues of fact where there are none. Plaintiffs' Response as to those paragraphs lacks any evidentiary basis and those paragraphs are undisputed.

With the exception of just three paragraphs (9, 20 and 61), Plaintiffs' qualifications lack *any* evidentiary support, and the evidentiary support they rely on for the remaining three paragraphs is misplaced. Plaintiffs' Response to Paragraphs 28, 35, 40, 41, 42, 47, 53, 54, 55, 56, and 64 is based solely on Forbes's Affidavit. Plaintiffs' Response to Paragraphs 68, 69, 70, 71, and 73 is based solely on Remington's Affidavit. As set forth in Walmart's Reply in Support of Walmart's Motion for Summary Judgment (ECF 135), neither affidavit has evidentiary weight.

Moreover, Paragraphs 25 and 57 are based solely on the allegations in the Amended Complaint and have no evidentiary weight. Paragraph 59 is based on the allegations in the Amended Complaint and Ray's unsworn answers to interrogatories, neither of which have any evidentiary weight.[1] Paragraph 12 relies on Cary Grant's deposition. As set forth in Walmart's Motion to Strike (ECF 134), Plaintiffs never identified Grant as a person with knowledge in their Initial Disclosures or their discovery responses,[2] and never otherwise disclosed him. Grant's deposition must be stricken and Plaintiffs cannot rely on it here. Regardless, Grant's deposition does not establish "remarks" lead to evaluation scores.

Paragraph 9. Plaintiffs do not dispute that each store has its own specific Facility Start Rate, which is a minimum starting rate within a store and is based on local competitive pay rates

---

[1] Plaintiffs also cite to ECF 35. However, ECF 35 is Plaintiffs' brief in opposition to Walmart's Motion to Dismiss, and, therefore, has no evidentiary weight.
[2] ECF 83-1 (initial disclosures); 86-1 (Remington Interrogatory Responses); ECF 87-1 (Ray Unverified Interrogatory Responses); ECF 84-1 (Forbes Interrogatory Responses).

for similar jobs. Plaintiffs assert the corporate office considers local rates when setting those facility rates. This additional fact is inconsequential. Paragraph 9 remains undisputed.

Paragraph 20. Plaintiffs do not dispute Store Managers complete Assistant Managers' annual performance evaluations. Instead, they assert that "District Managers (DMs) had to agree with SM's rating for it to be final." Plaintiffs' qualifications lack evidentiary support. Docket Entry 156-113 is an exhibit from a Declaration of Lisa Riley filed in another lawsuit and does not include the corresponding pages of her testimony referencing the exhibit. The "Field Compensation Programs" address certain management positions in 1997 and 1998. Plaintiffs were ***not*** in management positions during this time.[3] The FCP is inapplicable to them. Regardless, none of the cited pages state a District Manager had to approve a Store Manager's rating for it to be final. Exhibit A is Lisa Riley's deposition testimony in another lawsuit. Ms. Riley testifies the Store Managers complete the Assistant Manager's store evaluations and the "district manager would have to agree upon the – upon the rating and sits in on the evaluation." Ms. Riley did not testify the rating is not final without the District Manager's approval.

Paragraph 61. Plaintiffs allege, "Ray applied for Housewares in 'Hardlines' Adam Cohen, SM, said "she couldn't handle the job. The job went to a male." This qualification is based solely on the allegations in the Amended Complaint and Plaintiffs' opposition to Walmart's Motion to Dismiss [ECF 26, 35], both of which lack evidentiary weight. Plaintiffs also allege, "Ray wanted a Support Manager position" and "prior to the introduction of Management Career System ("MCS"), employees could not formally document interest in open positions/apply." Plaintiffs do not allege when or to whom Ray inquired about a Support Manager position. None of the citations support the factual assertion that Ray "wanted" a Support Manager position. Nor do the cited exhibits support the assertion that employees could not formally document interest in an open position prior to MCS. Instead, Exhibit 135-4 is a PowerPoint presentation with speaking notes from an August 2000 RPM training on the implementation of MCS. Exhibit 13 is Rose Reza's deposition taken in a different lawsuit. Plaintiffs do no attach the cited deposition pages and the pages attached do not address these facts. Plaintiffs never identified Reza as a person with knowledge in their Initial Disclosures or any of their discovery responses, and never otherwise disclosed her; therefore, Reza's deposition must be stricken and Plaintiffs cannot rely on it here.

---

[3] ECF 88-1 at 9 & Ex. Q (Forbes), ECF 88-1 at 15 & Ex. CC (Remington), ECF 88-1 at 14 & Ex. AA (Ray).

Exhibit 58, titled "RPM Responsibilities," is undated and does not support footnote 14.

### C. Facts Plaintiffs Allege Are Disputed

Plaintiffs dispute the following material facts contained in Walmart's SOF: Paragraphs 6, 7, 8, 10, 11, 13, 14, 15, 17, 18, 23, 26, 29, 30, 31, 32, 36, 39, 52, 58, 67, 76, 95, and 96. As set forth below, Plaintiffs' Response to those paragraphs does not create disputes of material fact.

Paragraphs 8 and 36. Plaintiffs' rely on Forbes's Affidavit, which lacks evidentiary weight because it is unsworn and lacks foundational testimony.

Paragraphs 26 and 58. Plaintiffs' rely on the Amended Complaint and Forbes's Affidavit, both of which lack evidentiary weight.

Paragraphs 39, 52, 67 and 76. Plaintiffs do not cite any record evidence.

Paragraph 6. Plaintiffs allege Store Managers "were responsible for all decisions related to pay and promotion for hourly employees. DMs/Market Managers, RPMs, and RVPs made salary manager position decisions." Plaintiffs lack evidentiary support for these assertions. Walmart does not dispute Store Managers make key operational decisions but delegate many other decisions—including decisions concerning pay and promotion—to other salaried managers within the store. [ECF 88-1 at ¶ 6]. Plaintiffs' articulated roles of the DM, RPM and RVPs are unsupported by the cited documents. Riley's testimony shows the DMs agreed with the Store Managers regarding the evaluations the Store Managers prepared and merely "[sat] in on the evaluation," and the RVP did not approve an Assistant Manager's performance rating or resulting performance increase. *See* Ex. A at 67:23-25; 68:1-9. Riley also testified DMs may be involved with decisions regarding Co-Managers, and Regional Managers may be involved with decisions for Store Managers. *See id*. at 68:2-20. However, no record evidence supports Remington's allegation she sought a promotion to Co-Manager, and Plaintiffs do not make any allegations regarding the Store Manager position. Riley's testimony at pages 96-97 relates to the RPM and RVP "signing off on" merit increases for Assistant Store Managers. This testimony does not equate to RPMs and RVPs *making* salary manager position decisions.[4] Docket Entry 156-113 is the 1997 and 1998 "Field Compensation Programs" related to certain management positions that none of the Plaintiffs held at the time, and none of the cited pages support Plaintiffs' "facts."

---

[4] Pages 105-106 of the Riley deposition relates to pay for Co-Managers, a position none of Plaintiffs held. Page 12 of DE 156-114 relates to Field Management Pay Guidelines for the Intern / First in Line Program, which is irrelevant to this case.

Paragraph 7. Plaintiffs dispute the reporting structure and claim the RPM or RVP was the single decision maker. No record evidence supports this allegation.

Paragraph 10.  Plaintiffs dispute each job is assigned a job code corresponding to a base level of pay or pay range, sometimes called a "pay class" or a "position pay grade" calculated based on the facility start rate. Plaintiffs allege multiple jobs are grouped together in one pay class/grade by job responsibilities. While the FYE 2003 Field Non-Exempt Associate Pay Guidelines (February 1, 2002 through January 31, 2003) includes a statement that "Each position is assigned to a particular Pay Class based on its job responsibilities," in reviewing the Pay Structure / Job Classifications chart on page 13 of Exhibit E, it is clear the job classes contained several positions with varying job responsibilities. Riley did not testify "multiple jobs were grouped together into a pay class by job responsibility." Rather, Riley confirmed that, under previous guidelines, several positions could fall into the same classification *even if the responsibilities varied*. ECF 130-1, 187:2-6. The pay policy guidelines at 156-109 do not support Plaintiffs' allegation.

Paragraph 11. Plaintiffs dispute each store determines and assigns premium shift differentials. Walmart did not cite to this fact in its SOF as Plaintiffs were not subject to a pay differential, rendering Plaintiffs' allegation immaterial.

Paragraph 13.  Plaintiffs dispute the guidelines provided a precise dollar value of each fixed pay increase. The deposition testimony cited addresses how performance ratings impact the performance increases, which is precisely what Walmart stated in Paragraph 12 of its SOF. *See* ECF 89. The remaining deposition testimony relates to job classifications and starting rates of pay based on an Associate's qualifications, which again does not support Plaintiff's dispute.

Paragraphs 14 and 95. Plaintiffs' dispute with respect to these paragraphs is based on the allegations of the Amended Complaint [ECF 26], which have no evidentiary weight.

Paragraph 15. Plaintiffs specify the date in 2006 the merit increases were eliminated and then discuss Assistant Managers' base salary and starting rates, which is not responsive to the undisputed material fact asserted by Walmart in paragraph 15 of its SOF.

Paragraph 17. Plaintiffs dispute who decides Assistant Managers starting salary adjustments and assert the RVP and RM "*might*" also help set starting pay." Riley provides no support for this assertion. [ECF 132-1 at 34:12-25].

Paragraph 18.  Plaintiffs dispute factors such as current pay and store size were considered

in determining an Assistant Manager's eligibility to receive an annual performance increase, instead stating the increase was only based on the Assistant Manager's annual evaluation score. This assertion is not supported by the record. The Field Management Pay Guidelines establish that performance increases were dependent on certain variables, including store size. *See* ECF 88-1.

      Paragraph 23.  Plaintiffs dispute Walmart's anti-discrimination training, alleging Walmart promoted stereotypes and did not enforce policies. Plaintiffs rely on language from inadmissible documents and deposition excerpts from undisclosed witnesses who lack personal knowledge, rendering their allegation immaterial.

      Paragraph 29.  Plaintiffs state Forbes was discharged, citing to their Amended Complaint. The Amended Complaint has no evidentiary weight.

      Paragraph 30.  Both parties cite to Forbes's Charge of Discrimination, which speaks for itself.

      Paragraphs 31 and 32. Neither paragraph is material to Walmart's Motion for Summary Judgment.

      Paragraph 96.  Plaintiffs dispute, without any evidentiary support, the fact that they never held positions that gave them access to personnel files of other Associates. Again, Plaintiffs cite to the Amended Complaint, which has no evidentiary weight. Additionally, citation to their own "facts" in P-15 and P-16 do not support how Plaintiffs would know others' pay rates and instead relate to assertions on starting pay rates and a Store Manager's discretion over pay increases.

## II.   RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS

      P-2., P-4.[5] , P-13. Undisputed.

      P-1.    Undisputed that certain policies and procedures regarding pay and promotion are created at Walmart's home office. Each Walmart Store or Sam's Club has its own specific facility start rate for hourly employees based on local competitive pay rates for similar jobs. [ECF 88-1 at 3, ¶10]. Decisions concerning pay and promotion are made by salaried managers within each Walmart store or Sam's Club; there is no record evidence supporting a "central decision-maker [at] Walmart's home office in Arkansas." *Id*. at ¶7.

      P-5.    Prior to the career preference system in 2004, personnel managers posted position openings manually at stores. [ECF 130-1 at 305:12-20; ECF 88-12, 2000 Job Announcement

---

[5] Plaintiffs did not include a paragraph entitled "P-3."

Policy] ("The Personnel Manager will be responsible for printing and posting all Job Announcements on Monday, Wednesday and Friday of each week at each time clock location. The posting must allow for easy access to open positions.").

P-6. The statements lack evidentiary basis. Exhibits MM (Miller Dep.), JJ (Harper Dep.), and II (Kintzele Dep.) must be stricken as these are excerpts are from witness depositions in other lawsuits, and those witnesses were not disclosed in Plaintiffs' Initial Disclosures or discovery responses. Plaintiffs have not established any of these deponents have personal knowledge specific to Plaintiffs' claims or relevant to any issue before the Court. The testimony does not support there was no information available to Associates regarding vacancies for MIT/AM positions from 1998-2003. Miller does not discuss the MIT/AM positions. (Ex. MM 172:4-173). Harper testified he could not recall a document explaining the MIT selection criteria, but stated information regarding the management training program available. (Ex. JJ, Harper Dep. 182:4-18). Kintzele testified several management positions were posted, and she heard of district managers posting MIT positions. (Ex. II, Kintzele Dep. 42:1-21).

Walmart disputes "positions were filled by 'tap on the shoulder' system." Associates interested in management positions were encouraged to discuss managerial opportunities with appropriate personnel. [ECF 130-1, 276:19-24]. Plaintiffs are incorrect that "regional staff were directed not to post AM or CM positions." Walmart's Management Career System Policy from September 2000 provides Co-Manager and Assistant Manager positions could not be posted *until* the People Director approved the position opening. [ECF 133-13].

P-7   While Store Managers (or Club Managers at Sam's) were responsible for making key operational decisions, they also delegated many decisions – including decisions concerning pay and promotion to other salaried managers within the store. [ECF 88-1 at 3, Riley Decl. ¶8]. Further, while Walmart does not dispute managers may not have documented the specific reasons for promotion decisions, Walmart maintained and documented the performance and disciplinary records of associates. *See id*. at Exs. Q, S, T, U, W, X, Y, Z, AA, CC, FF, GG].

P-8.   The Promotional Guidelines for each year contain the specific promotional criteria. Walmart disputes "policies on promotion permitt[ed] exceptions with senior manager approval." Neither the cited Promotion Guidelines nor Riley's testimony support such an assertion. When asked if exceptions to the minimum evaluation or time working for Walmart were possible, Riley responded there could be an exception. (Ex. 22) [ECF 130-1 at 267:2-7.]

6

P-9. Paragraph P-9 is not supported by competent evidence. Plaintiffs rely on excerpts from the depositions of Susan Midolo (Ex. DD, ECF 131-4), Sandy Ellison (Ex. EE, ECF 131-5), Kendall Scwindt (Ex. FF, ECF 131-6), James Clark (Ex. GG, ECF 131-7), and Marvin Raps (Ex. HH, ECF 131-8). However, for the reasons set forth in Walmart's Motion to Strike, these deposition excerpts are inadmissible as they consist of depositions of witnesses who were never identified by Plaintiffs as persons with knowledge of the claims in this case in their Initial Disclosures or discovery responses. The testimony also lacks foundation. The cited Riley deposition excerpts do not support the statements that "selections for salaried management positions were made by the RPMs," or that "DMs had a significant role in selecting individuals for MIT, and for RVPs in selecting SMs." Riley testified the RPMs and DMs approve the SMs MIT candidates, and a RVP may be involved if they knew an individual personally and made a recommendation or an Associate utilized the Open Door. [ECF 130-1 at 286:10-25; 287:1-6].

P-10. Walmart objects to the use of Exhibits II (Harper Dep.), GG (Clark Dep., ECF 137-7), NN (Evans Dep., ECF 131-13), and FF (Schwindt Dep., ECF 131-6) for the reasons set forth in Walmart's Motion to Strike. Walmart does not dispute the MIT Program was typically a gateway to an Assistant Store Manager position. The citation to the Riley deposition does not support Plaintiffs' broad assertion Walmart "had no formal system for the MIT Program until January 2003." Ms. Riley testified there were no postings for MIT positions prior to 2003 or log of associates who expressed an interest in the MIT Program. [ECF 130-1, 276:13-15; 278:1-2].

P-11. The statement that Walmart's "management readily admits the 'tap on the shoulder' system was problematic and the only way an employee could be promoted was at discretion of the manager" is not factually supported. Plaintiffs' citation to the Management Career System establishing all open DM and SM positions had to be posted, along with all Co-Manager and AM openings, is misplaced. [ECF 133-13 at 11].

P-12. The statement that Walmart "had a strong policy" against discussing pay lacks evidentiary support. Riley testified: "Again, I don't know if I would say . . . Wal-Mart would discourage. . . . I would say that it's somebody's individual personal information, so managers may discourage."). [Ex. 130-1 at 122:1-20].

P-14 Plaintiffs "facts" lack evidentiary support. Exhibit V, cited by Plaintiffs as support does not contain Page 692. The job classes contained several positions with varying job responsibilities. Riley confirmed that, under previous guidelines, several positions "may" fall into

7

the same classification even if the responsibilities varied. [ECF 130-1, 187:2-6]. Each Walmart store or Sam's Club is divided into various departments (such as Grocery, Furniture, Sporting Goods, or Front End) and each position within a facility corresponds to a specific job code, which corresponds to a base level or range of pay, which is calculated with regard to the Facility Start Rate. [ECF 88-1 at ¶ 9, 11]. An associate could be offered up to $2.00 above the starting rate depending on the associates' skills and abilities, qualifications, or education. [ECF 130-1 188:8-12]. The term "the Region," as used in this paragraph is ambiguous as Riley's testimony did not identify a particular Region. [ECF 130-1 at 187:21-188:3; 239:9-22].

P-15. Undisputed each job class corresponds to a base level of pay calculated from the Facility Start Date. [ECF 89 at 3, ¶9]. It is also undisputed moves between hourly positions within the same job class, *with no shift differential*, resulted in no pay change. [ECF 130-1 at 177:3-20].

P-16. The statement that "Store Managers approved performance ratings," is not supported by the cited evidence. The pay guidelines from 1995 provide all performance appraisals and increases must be signed and approved by the associate's immediate supervisor and next level supervisor. The Club Manager must sign off on all increases. [ECF 130-18 at 17, Ex. U]. This does not mean the Store Manager must "approve" all performance ratings. The statement that Store Managers were allowed discretion over pay increase is not supported by competent evidence. For the reasons stated above, Walmart objects to the introduction of the deposition of Cary Grant, Ex. G, ECF 103-7, as inadmissible.

P-17. Walmart objects to Plaintiffs' reliance on excerpts from the deposition of Evie Chitty [ECF 130-3, Ex. C], for the reasons set forth in Walmart's Motion to Strike.

P-18. The citations to Riley's deposition provides no evidentiary support for Plaintiffs' assertion that exceptions to the starting salary would require approval of the RVP. Riley testified she had no recollection of any exceptions, but if there were any "it would have to go up to the regional personnel manager, the district manager, and sometimes the regional manager as well as corporate compensation . . . to key it in." [ECF 132-1 at 34:12-25].

P-19. P-19 lacks evidentiary support.

P-20. Walmart disputes Plaintiffs claim that the basis for merit increases for salaried managers was not specified. The guidelines specifically provide merit increases are awarded to Associates who made a significant contribution to the business unit's results or exhibited exceptional job performance. [ECF 130-1, 96:8-18]. Riley's cited testimony provides the RPM's

(RM or RVPs) involvement was to "sign off" on the increase, indicating those positions were not the decision makers.

P-21. The statement a "single decision maker (RPM or RVP) in each Region made decisions for all salaried management employees" lacks evidentiary support. Riley testified pay was determined by Walmart's pay guidelines, with exceptions requiring approval from the RPM, the DM, and sometimes corporate compensation. ECF 132-1 at 33:25-34:25; 156-113 at 14-16 (discussing process for performance increase, not decision maker); 156-114 at 2 (SM must submit commendation form and increase recommendation to the RM and Regional Office).

P-22. Walmart objects to the use of the 2003 deposition of Jim Haworth for the reasons set forth in Walmart's Motion to Strike. The 2000 and 2001 exhibits are irrelevant to Plaintiffs' individual claims in this action.

P-23. Exhibits 103, 104, and 105 are inadmissible as set forth in Walmart's Motion to Strike.

P-24 & P-25. This Paragraph lacks evidentiary support. As set forth in Walmart's Motion to Strike, Peterson was never identified as a person with knowledge in Plaintiffs' Initial Disclosures or responses to written discovery, and, therefore, Plaintiffs cannot rely on his deposition and Exhibit 111 (introduced during the deposition).

P-26. This Paragraph lacks evidentiary support. As set forth in Walmart's Motion to Strike [ECF 134], Plaintiffs cannot use Bilgischer's deposition to oppose summary judgment.

P-27. This Paragraph lacks evidentiary support. As set forth in Walmart's Motion to Strike, Plaintiffs cannot use Arthur Emmanuel's deposition (Ex. 12) to oppose summary judgment. Further, the excerpts do not establish he "was unable to identify a single diversity program or any effort by Walmart to change the predominately male landscape" or "had no knowledge of goals, quotas, programs or plan of action to improve female management."

P-28. As set forth in Walmart's Motion to Strike, Coleman Peterson was never identified as a person with knowledge in Plaintiffs' Initial Disclosures or responses to written discovery, and Plaintiffs cannot rely on his deposition (Ex. 106) for evidence. Further, the cited excerpt does not support the assertion that "Walmart's reports show[ed] that women on average were paid less than men holding the same positions." [ECF 132-23, 141:5-20].

P-29. This paragraph lacks evidentiary support. As set forth in Walmart's Motion to Strike, Exhibit 117 [ECF 133-8] must be stricken as it is entirely dependent on the inadmissible

deposition of Jim Haworth, ECF 132-19.

P-30. The "facts" in this paragraph lack evidentiary support and are irrelevant to the individual pay and promotion decisions Plaintiffs' challenge. Plaintiffs mischaracterize Exhibit 110 (ECF 133-10), and Jeffrey Reeves' deposition testimony (Ex. 118, ECF 133-9) is subject to Walmart's Motion to Strike as Reeves was never identified as a person with knowledge or otherwise disclosed.

P-31. Exhibit 119 is a Notice of Annual Meeting of Shareholders with an incomplete excerpt from an unidentified document related to the Shareholder proposal regarding glass ceiling review. Walmart provided a statement in opposition to the Shareholder proposal, indicating that while it agreed with the general principles and objectives of the proposal, Walmart had already developed a diversity mission statement and implemented company-wide programs stressing leadership development, employee mentoring and workforce diversity, which had led to "[t]he number of women and minorities in management positions within Wal-Mart has increased steadily throughout the company."

P-32 – P-35. Dr. Richard Drogin's opinion is inadmissible as he was not disclosed as an expert or lay witness per the Court's Scheduling Order and Rule 26.

P-36. These assertions are not supported by the record evidence. The Schwindt, Harper and Reza depositions are inadmissible and subject to Walmart's Motion to Strike as the deponents were not disclosed as persons with knowledge, and those individuals lack personal knowledge regarding the Plaintiffs' claims. Plaintiffs did not file Ex. 944.

P-37. These assertions are not supported by the record evidence. As set forth above, the Harper transcript (ECF 131-10, Ex. JJ) is due to be stricken, and the deposition omits the referenced citations. [ECF 131-10]. Plaintiffs did not file an Exhibit 127.

P-38. These assertions are not supported by the cited exhibit (Exhibit 11, ECF 132-6) and are irrelevant to Plaintiffs' individual claims.

P-39. Undisputed Walmart hired DMI. The remaining assertions are not supported by the cited evidence and are irrelevant to Plaintiffs' individual claims.

10

Dated: June 14, 2019 Respectfully Submitted,

s/ *Scott A. Forman*
Scott A. Forman (FL Bar No. 0065950)
Email: SForman@littler.com
LITTLER MENDELSON, P.C.
333 S.E. 2nd Avenue, Suite 2700
Miami, FL 33131
Telephone: 305.400.7511
Facsimile: 305.603.2552

Kimberly J. Doud (FL Bar No. 523771)
kdoud@littler.com
LITTLER MENDELSON, P.C.
111 North Magnolia Avenue, Suite 1250
Orlando, Florida 32801
Telephone: (407) 393-2900
Facsimile: (407) 393-2929

*Attorneys for Defendant,*
*Wal-Mart Stores, Inc.*

## CERTIFICATE OF SERVICE

   I hereby certify that on this 14th day of June 2019, the foregoing *Reply to Plaintiffs' Response to Walmart's Statement Of Undisputed Material Facts* was electronically filed with the Clerk of Court using CM/ECF, and the foregoing document is being served on all counsel of record identified on the attached Service List by operation of the Court's electronic filing system.

                      */s/ Scott A. Forman*
                      Scott A. Forman

## SERVICE LIST

**Counsel for Plaintiffs**

Lindsey Wagner, Esq.
LWagner@scottwagnerlaw.com
Cathleen Scott, Esq.
CScott@scottwagnerlaw.com
**SCOTT WAGNER AND ASSOCIATES, P.A.**
Jupiter Gardens
250 South Central Boulevard, Suite 104
Jupiter, FL 33458

Leslie M. Kroeger, Esq.
LKroeger@cohenmilstein.com
Diana L. Martin, Esq.
DMartin@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL, PLLC**
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410

Joseph M. Sellers, Esq.
JSellers@cohenmilstein.com
Christine E. Webber, Esq.
CWebber@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL, PLLC**
1100 New York Ave NW, Suite 500 West
Washington, DC 20005

**Counsel for Defendant**

Scott A. Forman, Esq.
Email: SForman@littler.com
**LITTLER MENDELSON, P.C.**
333 S.E. 2nd Avenue, Suite 2700
Miami, FL 33131

Rachel Brass, Esq.
RBrass@gibsondunn.com
**GIBSON, DUNN & CRUTCHER, LLP**
555 Mission Street
San Francisco, CA 94105-0921

FIRMWIDE:164943754.1 080000.1363