United States District Court
for the
Southern District of Florida

| Kathleen Forbes and others, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-81225-Civ-Scola |
| | ) | |
| Wal-Mart Stores, Inc., Defendant. | ) | |

### Order Granting the Defendant's Motion for Summary Judgment

This case is an offshoot of the underlying complaint addressed by the United States Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In *Dukes*, the Supreme Court reversed the lower court's certification of a nationwide class of female Walmart employees claiming gender discrimination. The remaining Plaintiffs in this case, Kathleen Forbes, Linda Ray, and Edna Remington, having dropped the class claims alleged in their initial complaint, now seek redress individually. In their amended complaint (Am. Compl., ECF No. 26), the Plaintiffs, variously, lodge four counts of gender discrimination under Title VII: Ray and Remington allege disparate treatment and impact with respect to pay and promotions in Walmart Region 10 (counts one and three); and Forbes alleges disparate treatment and impact with respect to pay and promotions in Sam's Club Region 6 (counts two and four). (Am. Compl., ECF No. 26.) Walmart has now moved for summary judgment on a number of bases, maintaining there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law with respect to all the Plaintiffs' claims. (Def.'s Mot. for Summ. Judgment, ECF No. 90.) Although a number of Walmart's arguments are entirely misplaced, it has nonetheless managed to meet its burden of supporting its motion. Conversely, the Plaintiffs have failed to come forward with competence evidence that shows there are any genuine issues of material fact to be decided at a trial. (Pls.' Resp., ECF No. 126.) Accordingly, and after careful review of the relevant record in this case, the Court **grants** Walmart's motion (**ECF No. 90**).

1. **Background**

The Plaintiffs here, all former employees of Walmart, maintain the company discriminated against them based on their gender. All three Plaintiffs worked at Walmart for several years: Forbes from 1990 to 2006; Ray from 1996 to 2005; and Remington from 1993 to 2004. All three also worked as both hourly as well as salaried employees. In brief, they allege Walmart discriminated against

them in connection with their compensation as well as promotion opportunities. They also contend that, company-wide, Walmart not only tolerated, but fostered, systemic discrimination against women throughout the workplace.

## 2. Legal Standard

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *See Alabama v. N. Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmovant, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Yet, the existence of some factual disputes between litigants will not defeat an otherwise properly grounded summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the record as a whole could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[O]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [instead] must set forth specific facts showing that there is a genuine issue for trial." *See Anderson*, 477 U.S. at 248 (citation omitted). "Likewise, a [nonmovant] cannot defeat summary judgment by relying upon conclusory assertions." *Maddox-Jones v. Bd. of Regents of Univ. of Ga.*, 2011 WL 5903518, at *2 (11th Cir. Nov. 22, 2011). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita*, 475 U.S. at 586.

## 3. Analysis
## A. Disparate Impact Claims

All three Plaintiffs allege gender discrimination through the adverse impact of Walmart's facially neutral system for making decisions about compensation and promotions. Under a theory of discrimination based on disparate impact, a plaintiff need not show intentional discrimination. *Jefferson v. Burger King Corp.*, 505 Fed. App'x 830, 834 (11th Cir. 2013). Instead, "[t]he disparate-impact theory prohibits neutral employment practices that, while non-discriminatory on their

face, result in an adverse and disproportionate impact upon a protected group." *Id.* The parties here do not dispute that, generally, in order to prove their disparate-impact claims, the Plaintiffs must establish "(1) there is a significant statistical disparity among members of different [genders]; (2) there is a specific, facially-neutral employment policy or practice; and (3) there is a causal nexus between the specific policy or practice and the statistical disparity." *Cooper v. S. Co.,* 390 F.3d 695, 724 (11th Cir. 2004).

Walmart maintains the Plaintiffs have failed to (1) specify a particular policy or practice that resulted in the disparate impact or (2) present admissible evidence showing a significant statistical disparity among male versus female employees with respect to either pay or promotions. In response, the Plaintiffs acknowledge that "each Plaintiff's circumstances must be evaluated to determine if she has presented a facially neutral practice and statistical evidence of an adverse impact." (Pls.'s Resp. at 24.) At the same time, the Plaintiffs maintain they need not identify a particular policy or practice because they have "challenged Walmart's subjective discretion in the compensation process and allege it was incapable of separation from any objective elements of pay" and can therefore be evaluated "as a single practice." (*Id.* at 25.) They further advise that "[t]he statistical evidence when it is finally received from Walmart should be evaluated . . . by plaintiff, and will be addressed accordingly." (*Id.* at 24.) After careful review, the Court finds the Plaintiffs have failed to come forward with competent evidence showing there is a genuine issue of material fact to be determined at trial regarding any of their disparate impact claims.

To be sure, the Plaintiffs paint a disturbing picture of apparent gender discrimination that appears to have permeated much of Walmart's workplace, at every level of the company, from its top management to its hourly workers in individual stores and everyone in between. According to the Plaintiffs, a statistics expert, Dr. Richard Drogin, retained in conjunction with the *Dukes* litigation (but not this litigation), concluded, over a decade ago, that women employed at Walmart earned far less money than their male counterparts and were promoted less frequently and only after working for longer periods. The underrepresentation of women in management positions and the disparity in pay between genders—according to Walmart's own internal documents, say the Plaintiffs—appear to have been well known but were left, for years, largely unaddressed.

To this point, the Plaintiffs rely on Drogin's 2003 report, as well as a declaration he submitted, also in the *Dukes* litigation, in 2013, to support their disparate treatment claims. In his 2003 report, Drogin reached a number of damning conclusions, based on his analysis of data supplied by Walmart for nearly four-million employees who worked at Walmart from 1996 to 2002. According to the report, during that period, company-wide, women earned less

money than men at Walmart. Drogin concluded this was because there was a disproportionate number of women in the lower-paying hourly jobs, as opposed to higher paying management positions, and because women earned far less money than men who held what Drogin described as the same category of jobs.

The Plaintiffs also generally outline a number of Walmart "policies" that involved promotional and pay decisions. (Pls.'s Resp. at 11–13.) Regarding promotions from lower hourly positions to higher hourly positions, the Plaintiffs point to Walmart's requirement that employees be in their current position for at least six months, have no "coachings" (a type of disciplinary measure) within twelve months, and that their evaluations not be below standards. (Pls.'s Stmt. of Facts ¶ 4, ECF No. 127, 5.) The evidence presented by the Plaintiffs shows that individual store managers were responsible for making hourly promotion decisions and that there is no written record regarding why a store manager selected one person over another for an hourly promotion. (*Id.* at ¶ 7.)

With respect to promotions from hourly positions into management positions and promotions to successively higher levels within management, the Plaintiffs describe a number of other Walmart policies. For example, the Plaintiffs explain that certain management positions were filled by a "tap on the shoulder" system whereby higher-level managers simply designated people for openings. (*Id.* at ¶ 6.) The Plaintiffs also describe certain criteria used to evaluate employees for management promotions: at least one year with Walmart in a lower-level position; a performance evaluation of "meets expectations" or higher; no active disciplinary issues; up to date on training; not in a "high shrink" department; and a willingness to relocate. (*Id.* at ¶ 8.) Further, as the Plaintiffs present it, Walmart "had no formal system for the management in training program until January 2003." (*Id.* at ¶ 10.)

Regarding compensation policies, the Plaintiffs cataloged several other policies: a strong company policy against discussing pay (*id.* At ¶ 12); a pay structure based on job classes, each of which set a minimum start rate for each store (*id.* at ¶ 14); company-wide minimum start rates for jobs in the same class; store managers' having discretion to pay a new employee up to $2 an hour above the minimum start rate (*id.* at ¶ 14); store managers' having discretion over pay raises for hourly workers (*id.* at ¶ 16); and various policies regarding pay guidelines for salaried management and who made decisions regarding pay increases for those positions (*id.* at ¶¶ 18–21).

The Plaintiffs' presentation, however, falls short. To begin with, they rely on a report produced by an expert whom they did not timely disclose. Although Walmart was no doubt aware of the report from the prior litigation, its late disclosure by the Plaintiffs in *this* case prevented Walmart from deposing Drogin and countering with their own expert testimony as the evidence relates to these particular Plaintiffs (as opposed to the plaintiffs in the *Dukes* case). "Fed. R. Civ.

P. 26(a)(2)(C) provides clear deadlines for the submission of expert reports to the court, and Fed. R. Civ. P. 37(c)(1) gives district courts discretion to exclude untimely submissions." *Bearint ex rel. Bearint v. Dorell Juvenile Group, Inc.*, 389 F.3d 1339, 1348 (11th Cir. 2004). Under Rule 37(c)(1), the Plaintiffs may not use the late-disclosed expert report "to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." The Plaintiffs thus bear the burden of establishing that their failure is either justified or harmless. But rather than offering anything in the way of justification for the late disclosure, the Plaintiffs instead complain that Walmart is only seeking to exclude the report because it contains information damaging to its defense of this case. Thus, not only was the Plaintiffs' failure to timely disclose the expert not justified, but, as they acknowledge, the late disclosure is clearly not harmless. The Court therefore excludes Drogin's reports in considering Walmart's motion. Since the statistical evidence contained in Drogin's reports is the only statistical evidence the Plaintiffs submit in support of their disparate impact claims, those claims cannot survive summary judgment.

Even if, however, the Court were to consider that evidence, the Plaintiffs' claims still suffer from fatal defects because they fail to directly link any particular policy or practice to these individual Plaintiffs' compensation or promotional opportunities. In other words, from the record presented, the Court is unable to discern a causal connection between the policies they complain about and their low levels of pay and inability to attain promotions as compared to male Walmart employees. First, the Plaintiffs lump all of Walmart's policies and practices into one unified general decision-making process rather than identifying any specific individual policies. In doing so they rely on 42 U.S.C. § 2000e-2(k)(1)(B)(i) which provides an exception to the requirement that a plaintiff "demonstrate that each particular challenged employment practice causes a disparate impact." Under the exception, a defendant employer's "decisionmaking process may be analyzed as one employment practice" in the event a plaintiff is able to "demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis." 42 U.S.C. § 2000e-2(k)(1)(B)(i).

The Plaintiffs' argument here is a nonstarter. As an initial matter, the Plaintiffs have not even separated the policies regarding the Plaintiffs' claims of disparate impact as they relate to pay from those relating to promotion. Nor have they distinguished between policies applicable to hourly as compared to salaried employees. Furthermore, the statute provision the Plaintiffs rely on places the burden on them to show that the elements of Walmart's decision-making process are not capable of separation. Rather than bear that burden, the Plaintiffs instead complain that "Walmart does not present any argument about whether the subjective elements of the compensation decision can be separated from the

objective elements." (Pls.' Resp. at 25.) The Plaintiffs' conclusory proclamation, without more, that they have indeed presented evidence that the policies are incapable of separation, does not suffice.

Ultimately then, even if the Court were to consider the statistical analyses in Drogin's report, the Plaintiffs have fallen far short of carrying their initial burden of "show[ing] that a 'specific employment practice' has caused 'statistical disparities' in the treatment of employees in different protected classes." *Ladik v. Wal-Mart Stores, Inc.*, 13-CV-123-BBC, 2014 WL 4187446, at *8 (W.D. Wis. Aug. 22, 2014) (quoting *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 994, (1988)). They provide no way for the Court to connect the causal dots between the Plaintiffs' specific complaints regarding pay and promotion, or even female Walmart employees generally, to any particular employment practice. The Plaintiffs have simply failed to point to any genuine issue of material fact to be determined by a jury regarding their disparate impact claims.

### B. Disparate Treatment Claims

Under Title VII of the Civil Rights Act, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may carry the burden of proving that her employer intentionally discriminated against her because of gender in a number of ways. One way is to rely on the three-step burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). "A plaintiff can also present direct evidence of discriminatory intent[1] or demonstrate a 'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1221 (11th Cir. 2019) (quotations and citations omitted).

The first step of the *McDonnell Douglas* framework requires a plaintiff to set forth a prima facie case of intentional discrimination. To do so with respect to a case of intentional discrimination in compensation, "a plaintiff must establish that (1) she belongs to a [protected class]; (2) she received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) she was qualified to receive the higher wage." *Cooper*, 390 F.3d at 734–35. Regarding a failure-to-promote claim, the plaintiff must show "(1) that [she] belongs to a protected class; (2) that she applied for and was qualified for a promotion; (3) that she was rejected despite her qualifications; and (4) that other equally or less-qualified employees outside her class were

---

[1] The Plaintiffs have not indicated that the discrimination they claim can be established by direct evidence. Nor have they at any point directed the Court's attention to any record evidence that would show direct evidence of discrimination against any of these three Plaintiffs.

promoted." *Brown v. Alabama Dept. of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010). Regarding comparators, "a valid comparison will turn not on formal labels, but rather on substantive likenesses." *Lewis*, 918 F.3d at 1228. That is, "a plaintiff and her comparators must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Id.* (quoting *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1355 (2015)).

"If the plaintiff makes this [initial] showing, [s]he raises a presumption that h[er] race motivated h[er] employer to treat h[er] unfavorably." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325–26 (11th Cir. 2011). Thereafter, "the burden then shifts to the employer to rebut this presumption by producing evidence that [the employer's] action was taken for some legitimate, non-discriminatory reason." *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002). "If the employer meets its burden of production, the presumption of discrimination raised by the plaintiff's prima facie case is rebutted and thus disappears." *Smith*, 644 F.3d at 1325–26. Finally, if the presumption is rebutted, "the inquiry proceeds to a new level of specificity, whereby the plaintiff must show the employer's proffered reason to be a pretext for unlawful discrimination." *Id.* (quotations omitted).

**(1) Forbes has not set forth a claim of discrimination under the *McDonnell Douglas* framework.**

Prior to working for Walmart, Forbes had some experience working at other retail stores, including at an Ames Department Store. As the Ames store was going out of business, Forbes began working at Walmart's store number 1085 in 1990, at the refund desk. Three years later, she transferred to one of Walmart's Sam's Club stores, number 6448, in New Port Richey, Florida. At the Sam's Club store, Forbes first ran the hot dog stand and then was promoted as "team lead" of the café. According to Forbes, after much effort over the course of many months, she was eventually promoted, in 2000, and took on the salaried position of photo lab manager. (Pls.' Stmt. of Facts at 4, ¶ 26.) Forbes says that in October 2005 she suffered a mental breakdown while at work and thereafter took three months of medical leave. (Forbes Aff. ¶ 7, ECF No. 130-4, 2.)[2] She says that after her leave, Walmart "discharged" her in January 2006. (*Id.*)

Forbes complains that throughout her tenure with Walmart she was repeatedly paid less than male workers in similar positions.[3] In support she

---

[2] Although, as discussed below in section 3.B.(3), the Court is not affording Forbes's unsworn affidavit any weight, it will nonetheless evaluate the allegations therein in an attempt to guide the parties' litigation efforts in similar cases now pending before the Court.

[3] In the amended complaint, Forbes also alleges a claim for discrimination based on Walmart's failure to promote her, in favor of less-qualified male employees. However, as pointed out by Walmart, Forbes failed to include any claim based on a failure-to-promote theory in her Equal

identifies seven alleged male comparators in her complaint: Ken Smith, Alex Kellner, Scott Rhodes, Richard (last name unknown), Paul Hauldercourt, Joe Carruso, and John Bammon. (Am. Compl. at ¶¶ 128, 135, & 137.) Walmart maintains that six of these seven are not proper comparators and that for the seventh—Rhodes—Walmart has presented a legitimate, nondiscriminatory reason to explain their pay difference. Tellingly, in their opposition briefing to Walmart's motion for summary judgment, the Plaintiffs do not even mention or identify, never mind discuss in any detail, a single one of these listed male employees or any other particular male employees who might qualify as comparators. Instead, the Plaintiffs complain that Walmart has produced only limited discovery,[4] argue that other evidence (aside from comparator evidence) establishes Walmart's discriminatory intent, and posit that all employees with the same job title ("such as sales associates") should be considered comparators.

To be sure, after a careful review of what appears to be the relevant portions of the record,[5] the Court can find no support for classifying Smith, Kellner, Richard, Hauldercourt, Carruso, or Bammon as comparators to Forbes. The Court also finds that, even if it were to consider Rhodes a proper comparator, Walmart has successfully rebutted any presumption of discrimination by showing that its pay decisions were made for a legitimate, nondiscriminatory reason.

*Smith*: To begin with, there is no evidence that Smith and Forbes were in any appreciable way similarly situated. Forbes complains that during two distinct periods, Smith was paid more than she was. During the first period, Smith had been hired as a "meat cutter/Associate in the Meat Department" while Forbes had been working in the refunds department, at the hot dog stand, and then team lead of the café. Forbes says that when Smith started, his initial wage was more than hers even though she had been working for Walmart for four years when he was hired. Forbes also says that, years later, Smith earned more

---

Employment Opportunity Commission charge of discrimination. Instead, Forbes only claimed to have been discriminated against based on receiving less compensation than her male counterparts. Because her charge alleged only pay discrimination, and not promotion discrimination, the Court considers her promotion claims barred. *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 (11th Cir. 1994) (finding promotion claims properly barred where only pay claims were alleged in employee's charge because "[a] claim of unequal pay is not the equivalent of a claim alleging a failure to promote").

[4] For the reasons discussed in the following section (2), the Plaintiffs' request under Rule 56(d) for a deferral of the Court's consideration of the motion for summary judgment, pending the receipt of additional discovery from Walmart, is denied.

[5] The Court points out that the parties dumped over 6500 disorganized pages of evidence into the summary-judgment record. The Court has mostly confined itself to reviewing those portions of the record that the parties have specifically identified as addressing facts that the parties actually dispute.

than she did when he was a meat-processing manager (as of 1998) and she was a photo manager (as of 2000). Without any specific support, the Plaintiffs, in their response to Walmart's statement of facts, maintain that "Forbes and Smith's positions were similar in material aspects" and that "[t]hough less experienced, Smith was compensated as a higher rate." (Pls.' Resp. to Def.'s Stmt. of Facts at 4, ¶ 58.) But Smith's status as an hourly employee at the same Sam's Club store where Forbes worked is not enough to establish that he and Forbes were similarly situated in all material respects. Nor is Smith's position as a meat-processing manager, as of 1998, as compared to Forbes's position as a photo manager, as of 2000. Many salient questions remain: Did the same person make rate-of-pay decisions for both of them? What criteria were relied on to make pay decisions for Forbes versus Smith? Did they both work the same shifts? Were the hazards or challenges of the two jobs comparable? Did both jobs require the same level of dexterity? Did they both manage the same number of subordinates? Were the workloads in both jobs comparable? Simply put, the Plaintiffs have not presented any evidence that would support treating Smith and Forbes as comparators.

*Kellner*: Next, in her complaint, Forbes alleges Alex Kellner, who was a photo manager at another store, in Tampa, was paid more than she was despite working fewer hours and having the same level of experience. (Am. Compl. at ¶ 135.) Walmart, however, presented evidence (which the Plaintiffs did not dispute) that "[a]t no time during the course of Mr. Kellner's and Ms. Forbes'[s] employment as Lab Managers, did Mr. Kellner earn a higher base salary than Ms. Forbes." (Def.'s Stmt. of Facts ¶ 36, ECF No. 89, 5; Riley Aff. ¶ 50, ECF No. 88-1, 11.) Forbes counters that although their base salaries may have been the same, Kellner was actually compensated more because of "bonuses/raises for which Forbes was denied." (Pls.'s Resp. to Def.'s Stmt. of Facts at 4, ¶ 36.) However, the only support the Plaintiffs cite to in order to establish this fact is Forbes's unsworn declaration wherein she simply says, "I understood that Alex Kellner was making more than me overall with his extra pay such as bonuses." (Forbes Aff. ¶ 9, ECF No. 130-4, 2.) Forbes's "understanding" as presented in an unsworn statement, is not evidence sufficient to carry her past summary judgment. Thus, even if Forbes had presented enough evidence to establish that Kellner is a comparator, which she likely has not, she has nevertheless not carried her of burden of rebutting Walmart's showing that Kellner never received more compensation than she did. Nor did the Plaintiffs even bother articulating a response to Walmart's argument in this regard in their opposition briefing to Walmart's motion.

*Richard, Hauldercourt, Carruso, and Bammon*: Forbes also names Richard, Hauldercourt, Carruso, and Bammon in her complaint as men who were earning higher salaries than she was. The Court is unable to find any

evidence indicating that (1) the person Forbes identifies as Richard even exists or (2) Hauldercourt, Carruso, and Bammon are proper comparators. In disputing Walmart's statement of facts regarding these employees, the Plaintiffs point to Forbes's unsworn statement, again, and various paragraph numbers unassociated with any identifiable documents. (Pls.'s Resp. to Def.'s Stmt. of Facts at 1 n. 11, 2 n. 19, 2 n. 20.) The Court has reviewed the entirety of Forbes's "affidavit": none of these individuals is even so much as mentioned. Nor is the Court able to discern what evidence the Plaintiffs' unassociated paragraph numbers relate to. As such, Forbes has fallen woefully short of carrying her burden of establishing any genuine issue of material fact with respect to these four employees.

*Rhodes*: Assuming Rhodes is a proper comparator, which is not necessarily clear on this record, Walmart submits the Plaintiffs, in any event, have been unable to adduce evidence that Walmart's legitimate, nondiscriminatory reason for the pay difference is pretextual. As Walmart has set forth, Rhodes was both more highly rated than Forbes and also generated far more profit for his photo lab than Forbes did—often doubling her profitability. (Def.'s Stmt. of Facts at ¶¶ 42–48.) While not disputing any of these facts or the admissibility of the evidence they are based on (*e.g.*, Pls.'s Stmt. of Facts at 1 n. 7; 1 n. 8; 2), the Plaintiffs argue that Walmart's proffered non-discriminatory reason is simply a "guess by Wal-Mart's counsel" based on "post hoc speculations" and inadmissible evidence (Pls.' Resp. at 19–20.) These arguments all miss the mark. Lisa Riley, Walmart's vice president of global compensation, set forth in her declaration that: (1) photo lab managers' performance evaluation scores and their profitability were factors relied on in deciding their annual pay increases (Riley Aff. at ¶ 13); (2) Rhodes's annual performance evaluations were consistently higher than Forbes's (*id.* at ¶ 51); and (3) the profitability of Rhodes's photo center greatly outpaced Forbes's, by more than double in three out of the four relevant years (*id.* at ¶ 52). This amounts to sufficient evidence showing a legitimate, non-discriminatory reason to rebut any prima facie showing of discrimination: Walmart's "evidence raises a genuine issue of fact as to whether it discriminated against [Forbes]" as it has "clearly set forth, through the introduction of admissible evidence, the reasons for [Forbes's pay rate]." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981).

In response, the Plaintiffs have failed to come forward with any competent evidence that Walmart's proffered reason for the determination of Forbes's compensation rate was actually just pretext for unlawful discrimination. As such, Forbes's claim as it relates to Rhodes presents no genuine issue of material fact to be determined at trial.

In sum, the Plaintiffs have failed to establish a prima facie case of unlawful discrimination under the *McDonnell Douglas* framework with respect to Forbes's claims.

**(2) Plaintiffs Linda Ray and Edna Remington have not set forth claims of discrimination under the *McDonnell Douglas* framework.**

Ray and Remington both had experience prior to working at Walmart. Ray says she had management experience in some capacity (Pls.' Resp. to Stmt. of Facts at 1 n. 13) and Remington had several years of retail experience, in other department stores, as a salesperson; department manager; assistant manager; and as an employee in fine jewelry (*id.* at 1 n. 15). Ray began working at Walmart, as an hourly employee, in store number 1374 in Altamonte Springs, in December 1996. (Def.'s Stmt. of Facts at ¶ 59.) In 1998 she was promoted to department manager. (*Id.* at ¶ 61.) She resigned in 2003 but was then rehired in April 2005, again as a department manager in the same store. (*Id.* at ¶¶ 61–2.) Ray then resigned again, a few months later, in July 2005. (*Id.* at ¶ 63.) For her part, Remington began work at Walmart as an hourly associate as well. She started in 1993, in store number 613 in Ormond Beach. (*Id.* at 68.) In June 2000, Remington was promoted to the salaried position of assistant manager in another store. (*Id.* at ¶ 71.) In February 2002, she returned to store 613, where she stayed until she resigned in 2004. (*Id.* at ¶ 72.)

Both Remington and Ray allege they were repeatedly passed over for promotions which were given instead to male employees. (*E.g.*, Ray Am. Resps. to Interrogs., Exhibit O, ECF No. 130-13, 3; Remington Aff., Ex. K, ECF No. 130-10, 2.)[6] They also both maintain there were many instances where their male counterparts were paid more than they were. (Remington Aff. at 1–2; Ray Interrog. Resps. at 4.) And while both Plaintiffs repeatedly insist there are many male comparators or male employees who were either equally or less-qualified who were promoted, they have failed to adduce actual evidence of a single one. In response to Walmart's pointing out this deficiency, the Plaintiffs complain they are still awaiting discovery. As the Plaintiffs should well understand by now, the Court is not receptive to this argument. (*See* ECF Nos. 112, 114.) And it will certainly not consider affording them relief under Rule 56(d) at this late date, especially when such a request is not set forward in a separate motion but is instead inserted into a response to a summary-judgment motion. The Plaintiffs filed this case almost two years ago and have been involved in this litigation for decades. And while the case was stayed for seven months after it was filed, the Plaintiffs were nonetheless afforded plenty of time to marshal their evidence. The

---

[6] Although, as discussed below, the Court is not affording Remington's unsworn affidavit or Ray's interrogatory responses any weight, it will nonetheless evaluate the allegations therein in an attempt to guide the parties' litigation efforts in similar cases now pending before the Court.

fact discovery deadline has long since passed. Lastly, the Plaintiffs fail to specify what particular facts they expect that will allow them to rebut Walmart's motion. This also dooms their 56(d) request. *Smedley v. Deutsche Bank Tr. Co. Americas*, 676 Fed. App'x 860, 862 (11th Cir. 2017) ("Vague assertions that additional discovery will produce needed, but unspecified facts fail to meet this burden" under Rule 56(d).).

In sum, the glaring absence of evidence supporting their claims precludes Ray and Remington from establishing a *prima facie* case of gender discrimination, with respect to either pay or promotion, under the *McDonnel Douglas* framework.

### (3) The Plaintiffs have not set forth evidence sufficient to establish a "convincing mosaic" of gender discrimination.

Although the Plaintiffs have failed to carry their burden under the *McDonnell Douglas* framework, this is not, as the Plaintiffs correctly point out, the only pathway available to them to show a discriminatory intent with respect to the employment decisions they complain about. Instead, "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith*, 644 F.3d at 1328 (quotations and citations omitted). The term "'convincing mosaic' is not a legal test"; instead it is really just used as "a metaphor to illustrate why courts should not try to differentiate between direct and indirect evidence" of workplace discrimination. *Williams v. Hous. Opportunities for Persons with Exceptionalities*, 18-13600, 2019 WL 3072470, at *3 n. 4 (11th Cir. July 15, 2019) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764-65 (7th Cir. 2016)). By way of examples, "[a] 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 877 F.3d 1000, 1018 (11th Cir. 2017), *reh'g en banc granted, opinion vacated, on other grounds, sub nom. Lewis v. City of Union City, Georgia*, 893 F.3d 1352 (11th Cir. 2018), and *on reh'g en banc sub nom. Lewis v. City of Union City, Georgia*, 918 F.3d 1213 (11th Cir. 2019) (quotations and alterations omitted).

In opposing Walmart's motion for summary judgment based on their ability to present a convincing mosaic, the Plaintiffs point to the "pattern or practice" and "me too" evidence they say is in the record. (Pls.' Resp. at 17–18.) The Plaintiffs neglect, however, to identify exactly what record evidence they say is applicable to their argument, apparently leaving the Court itself to dig through other parts of their opposition, their statement of facts, and other parts of the

6500-page record for them. This is wholly improper. A "district court ha[s] no duty to dig through the record to attempt to substantiate [a party's] unsubstantiated statement." *MARCO WATTS, Plaintiff - Appellee, v. CLUB MADONNA, INC., a Florida for-profit corporation, LEROY C. GRIFFITH, Defendants - Appellants.*, 18-13764, 2019 WL 3731311, at *4 (11th Cir. Aug. 8, 2019). That is, it is the non-moving party's responsibility, not the Court's, to properly flesh out arguments in opposition to a motion for summary judgment. *Blue Cross & Blue Shield of Alabama v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990). This is especially germane where, here, the parties have dumped over 6500 pages of documents on the docket during summary-judgment briefing.

Regardless, since the Court has pending before it scores more cases like the instant one, it has nonetheless reviewed the Plaintiffs' statement of additional facts (ECF No. 127) in an attempt to glean what types of hurdles the parties will *both* face in those additional cases as they move forward. Even after this supplementary review, however, the Court finds the Plaintiffs have not been able to proffer facts sufficient to present a convincing mosaic of gender discrimination with respect to these Plaintiffs. This is so for various reasons: the Plaintiffs often fail to establish their "facts" with supporting evidence; the supporting evidence they rely on is inadmissible; or the facts they present, without more, simply do not establish Walmart's disparate treatment of *these* Plaintiffs.

For example, with respect to unsupported "facts" the Plaintiffs have submitted, the Court points to paragraph 22 of the Plaintiffs' statement of facts. In that paragraph, the Plaintiffs present as fact: "Wal-Mart's own reporting support[s] discrimination." (Pls.' Stmt. of Facts at ¶ 22.) They then point to a number of internal documents in which Walmart purports to recognize that the percentage of women in Walmart's management is very low and significantly lags behind several other retailers. (*Id.*) One of the documents they cite to is "Ex. 100." But the Court searched through the Plaintiffs' list of eighty exhibits and could not find an "Exhibit 100." The Plaintiffs have either not submitted an Exhibit 100 or they have not submitted it to the Court in a readily ascertainable manner. (*E.g.*, Pls.' Not. of Filing Corr'd Exs., ECF Nos. 130, 3; 131, 3; 132, 3; 133, 3 (skipping from exhibit 87 to exhibit 101).) Similarly, in paragraph 37, the Plaintiffs point out that senior Walmart management referred to female associates at "little Janie Qs" and "girls." In support, the Plaintiffs refer the Court to various pin cites in exhibit JJ. First, these pin cites do not exist in this exhibit and, second, neither phrase or word, in any event, appears anywhere in the referenced document. In at least two other examples the Plaintiffs again reference exhibits that do not appear to exist. (*E.g.*, Pls.' Stmt. of Facts at ¶ 28 (referring to nonexistent exhibit 1160); ¶ 37 (referring to nonexistent exhibit 124).)

Some of the Plaintiffs' most theoretically potent evidence is inadmissible. As discussed above, in section 3.A., expert Drogin's report is inadmissible

because the Plaintiffs never disclosed him as an expert. Additionally, Forbes and Remington have both submitted "affidavits" which present evidence that could, potentially, support a convincing-mosaic showing. (ECF Nos. 130-4, 130-10.) Inexplicably, however, neither affidavit is sworn or made under penalty of perjury as required under 28 U.S.C. § 1746. The Court cannot, therefore, rely on the contents therein in ruling on a motion for summary judgment. *Dudley v. City of Monroeville*, 446 Fed. App'x 204, 207 (11th Cir. 2011) ("Unsworn statements do not meet the requirements of Rule 56, so the district court could not—and properly did not—rely on the content of the citizen's statement."). The same goes for the unsworn interrogatories the Plaintiffs submitted on behalf of Ray. (ECF No. 130-13.)

Further, the Plaintiffs present a litany of facts that purport to show that women are generally underrepresented in management positions and paid less than men, on average, in many positions. Not only does this fail to show that Walmart was purposely discriminating against women in order to attain such a result or that gender discrimination is Walmart's standard operating procedure, but there is no competent evidence the Plaintiffs identify that actually links these purported disparities to the pay and promotion decisions that affected them. This missing link, even if the evidence establishes some discriminatory actions within the company, has prevented the Plaintiffs from establishing even a plausible mosaic, never mind a convincing one, regarding their own claims of intentional discrimination. *See Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 149 (2d Cir. 2012) (noting that while "proof that an employer engaged in a pattern or practice of discrimination may be of substantial help in demonstrating an employer's liability in the individual case, . . . such proof cannot relieve the plaintiff of the need to establish each element of his or her claim.")

Other "facts" the Plaintiffs identify include findings made by the "Women in Leadership Program" which was started within Walmart in 1992. Among the findings the Plaintiffs list in their statement of facts are "career decisions are made for associates based on gender"; "aggressive women intimidate men"; "men are interviewed as the replacements, women are viewed as support"; and "men's informal network overlooks women." (Pls.' Stmt. of Facts at ¶ 26.) These issues are identified in a document that purports to have been prepared by a member of the Leadership Program. (Ex. 113, ECF No. 133-5, 1.) This document is particularly unhelpful to Ray and Remington since it states that the listed issues were identified in 1992—before either of them ever started working at Walmart—and there is no indication in the document that the issues identified continued. But even for Forbes, the document does not create a genuine issue of material fact, even for that limited time period. The findings listed in the document are thoroughly devoid of context. What is the breadth of the problems identified? Are they isolated or ubiquitous? What are the findings based on? Are they based on

anecdotal reports? Statistical studies? General perceptions of the author? The statements themselves are conclusory and devoid of any specifics that have any evidentiary support. While this document certainly raises serious concerns about perceived gender issues within Walmart by some employees, there is nothing within the memo's conclusory assertions and generalizations that raise any genuine issues of material fact as to Walmart's intentional gender discrimination against these three Plaintiffs.

In sum, the allegations the Plaintiffs present here certainly paint a disturbing picture regarding the treatment of female employees at Walmart compared to male employees. However, the Plaintiffs have nonetheless fallen short, in this case, of presenting a cohesive body of actually admissible evidence that would allow a jury to infer intentional discrimination against them by the decisionmaker. Even when the record is taken in the light most favorable to the Plaintiffs, it simply does not raise a reasonable inference of intentional discrimination with respect to these three Plaintiffs. *Cf. Smith*, 644 F.3d at 1324 (where the Eleventh Circuit held summary judgment on a disparate treatment claim to be inappropriate because there was substantial evidence of discriminatory racial animus, including well-documented racial tensions following a workplace shooting resulting from racism and evidence indicating that the disciplinary decision made incorporated consideration of the plaintiff's protected class); *Holland v. Gee*, 677 F.3d 1047, 1063 (11th Cir. 2012) (finding that a plaintiff had constructed a convincing mosaic with evidence showing that after disclosing her pregnancy, the fact that she was pregnant "became part of the decision-making process regarding her" employment and that "pregnancy was a subject of the discussions that led to her termination").

4. **Walmart's remaining arguments are without merit.**

Although the Court agrees with Walmart that the Plaintiffs have failed to come forward with evidence sufficient to submit their case to a jury, it nonetheless notes that many of Walmart's arguments are wholly meritless, if not frivolous. Such improper arguments only detract from a party's valid claims and waste scarce judicial resources.

For example, among Walmart's arguments is that the Plaintiffs' "pattern or practice claims must be dismissed." (Def.'s Mot. at 5–6.) But the Court has already advised the parties, in its order on Walmart's motion to dismiss, that it would not be considering any stand-alone claims based solely on a pattern or practice of discrimination. (ECF No. 53, 2–3.) Further, to the extent Walmart claims the Plaintiffs should not be permitted to even present any evidence showing that there is a pattern or practice of discrimination at Walmart, its contention is without support. *See Chin*, 685 F.3d at 149 (noting that "proof that

an employer engaged in a pattern or practice of discrimination may be of substantial help in demonstrating an employer's liability in the individual case" even though such proof, by itself, "cannot relieve the plaintiff of the need to establish each element of his or her claim."); *Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 782 (7th Cir. 2007) ("[A] plaintiff may use pattern evidence of disparate treatment even if that evidence is not rigorously statistical, although, standing alone, it is insufficient evidence to withstand summary judgment.").

Similarly, Walmart's hypertechnical understanding of the requirements for a plaintiff's Equal Employment Opportunity Commission charge of discrimination is misplaced. Going forward, Walmart is cautioned that the Court deems the Plaintiffs' complaint allegations (with the sole exception of Forbes's promotion claims, as described above in footnote 3 in section 3.B.(1)) to fall well within "the scope of the EEOC investigation which" would have been "reasonably [] expected to grow out of the charge[s] of discrimination." *Green v. Elixir Indus., Inc.*, 152 Fed. App'x 838, 840 (11th Cir. 2005) (quotations omitted). Thus, to the extent Walmart seeks to raise this exhaustion argument in relation to the other cases pending against it, it must ensure that it is not relying on an overly narrow interpretation of what a plaintiff is required to present in an EEOC charge. That is, so long as the claims raised in a complaint are "*sufficiently related* to the allegations in the charge," "it would be unfair to civil rights plaintiffs to bar such claims in a civil action." *Butts v. City of New York Dept. of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993) (emphasis added).

Likewise, the Court takes issue with Walmart's insistence that "comparisons between similarly-situated employees is required" for the Plaintiffs to prevail on their claims. (Def.'s Mot. at 7.) This is contrary to well established Eleventh Circuit precedent and Walmart is ordered to refrain from continuing to make this specious argument. *E.g. Smith*, 644 F.3d at 1328 (noting that "the plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case").

In sum, and in light of the extraordinary number of related cases pending before the Court, counsel for both parties are forewarned that such continued sloppy briefing and unsupported arguments will not be tolerated going forward and will likely subject counsel to sanctions. The Court reminds counsel that sanctions may be imposed when a claim "has no reasonable factual basis"; or when a claim "is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (quotations omitted).

### 5. Conclusion

As set forth above, the Court **grants** Walmart's motion for summary judgment. (**ECF No. 90**). While the Plaintiffs' presentation certainly indicates that something was indeed rotten within the corporate culture at Walmart, they have failed, at least in this case, to marshal enough evidence to propel their individual claims past summary judgment. It appears, however, to be only a matter of time before Plaintiffs' counsel manages to get it right with one of the dozens of cases now pending before the Court. No doubt, in the right case and with the right advocacy, a female Walmart employee with better facts should be able to assemble a powerful case of gender discrimination that these Plaintiffs allege has plagued the entire Walmart operation for many years. The Court urges counsel for both sides to carefully consider which cases fall into this category and those which do not as they move forward with similar cases. The Court also advises counsel to carefully contemplate their obligations under Federal Rule of Civil Procedure 11(b) as they pursue and defend the other cases they are presently litigating before this Court.

The Clerk is directed to **close** this case and any pending motions are **denied as moot**. Both the calendar call, set for **September 10, 2019**, as well as the trial date, set for **September 16, 2019**, are canceled.

**Done and ordered**, at Miami, Florida, on August 16, 2019.

_____
Robert N. Scola, Jr.
United States District Judge